Dorothy L. Huckle v. Commissioner.
Huckle v. Commissioner
Docket No. 2286-65.
United States Tax Court
T.C. Memo 1968-45; 1968 Tax Ct. Memo LEXIS 252; 27 T.C.M. (CCH) 209; T.C.M. (RIA) 68045; March 18, 1968. Filed Burton S. Schreiber, Powers Bldg., Rochester, N. Y., for the petitioner. Julian I. Jacobs, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The respondent has determined a $4,962.82 deficiency in petitioner's individual income tax for the calendar year 1959. Although the petitioner disputed the deficiency in its entirety, she seems to have abandoned a determined short-term capital gain of $37.50 arising out of the sale of a pick-up truck in 1959 which respondent included in her income for that year. Respondent concedes that this gain is not includable if we find the petitioner was not in partnership *253 with her former husband. There remains for our decision one major question: Whether, for purposes of determining petitioner's basis in inventory and in depreciable property, petitioner and her former husband, Howard K. Huckle, had been partners in various business ventures, the most important of which was a mink ranch, prior to their separation, property settlement, and divorce in 1959. [1] Two peat moss operations and two rental properties comprised the other ventures. Respondent determined that these were also operated as husband-wife partnerships, and allowed petitioner one-half of the operating losses which the mink ranch and which each of these latter ventures had generated in 1959 and prior to the date of the property settlement. If we find that a partnership existed in any one or all of the above three ventures, then we must find in what proportions the shares of each partnership were held. *254 Findings of Fact Some of the facts have been stipulated by the parties; such facts are adopted as our findings and incorporated herein by this reference. Petitioner Dorothy L. Huckle (Dorothy) was a resident of Ontario, New York, at the time of filing this petition. She filed an individual income tax return for the taxable year 1959 with the district director of internal revenue at Syracuse, New York. Dorothy was married to Howard K. Huckle (Howard) in 1931. For 9 years prior to her marriage and for 13 years thereafter she was a full-time school teacher and earned from $1,200 to $1,800 per annum in the early years of such job. At the time of her marriage petitioner had the following assets: $1,500 in savings' deposits, 10 shares of RCA stock, and enough cash to buy furniture and pay the difference between the value of Howard's old car and the cost of a new one. Howard brought no assets to the marriage. In the spring of 1933, Howard lost his job with AT&T and was unemployed during most of the year. In the fall of 1933 Howard and Dorothy started a mink ranch on rented land in Seneca Falls, New York. The record does not reveal what portion, if any, of the original investment *255 in the mink ranch Howard made, but Dorothy did contribute capital to get the business started. The proceeds from the operation of the mink ranch were reinvested in the business, used to buy clothing and food, and used to purchase securities in equal amounts for Howard and Dorothy. In 1937 the mink ranch operations were transferred to a farm in Clyde, New York, which Dorothy and Howard had purchased, taking title in their joint names. In 1951 the business was again moved; this time to a 70-acre farm in Ontario, New York. The new farm was purchased and title to the land was taken in the joint names of Howard and Dorothy as tenants by the entireties. The mink farm was operated on a part of this land in Ontario through 1959, the year in issue. Also located on the land in Ontario, New York, was a triplex apartment which Howard and Dorothy accounted for as a separate business. As with many other aspects of this case, the record is far from complete as to how the second piece of rental property, a duplex, located at Union Hill, New York, was owned; however, in a sworn statement of May 13, 1959, petitioner alleged, "We also own a double, wooden frame dwelling at Union Hill, New York for *256 which we paid six thousand ($6,000.00) Dollars in December, 1953." We adopt such sworn statement as our finding. While the mink business was located in Clyde, the letterhead on its stationery read: Huckle Fur Farm Howard Huckle, Owner 211 None of this stationery was purchased after 1952. In that year the name of the business was changed to "Huckle Mink Ranch" and new stationery was purchased. The new letterhead made no reference to Howard's role in the ownership of the business; it read simply: Huckle Mink Ranch After 1952, the new stationery was normally used for correspondence; however, remaining stocks of the old were used occasionally while the supply lasted. Purchase invoices acquired in the 1940's bore the heading "Howard K. Huckle." When the business was moved to Ontario the address "Ontario, New York" was added to them and they were used thereafter. The only other name the business ever used was "Huckle Mink Farm." On January 16, 1952, Dorothy and Howard signed a so-called "Certificate of Partnership" pursuant to section 440 of the New York Penal Law. This certificate was prepared by their attorney and was filed on September 22, 1952. It was never revoked, altered, *257 or modified. Section 440 as it was then in effect, was part of article 40 of the New York Penal Code, and was concerned with crimes arising out of "Business and Trade." Section 440, was entitled "Filing of certificates by persons conducting business under assumed name or as partners," and it stated the general requirement that "No person shall hereafter (a) carry on or conduct or transact business in this state under any name or designation other than his real name." Section 440.1(b) required all partners who conducted business in New York to file with their county clerk a certificate such as the one petitioner and her husband filed. The text of their certificate is reproduced below: Certificate of Conducting Business Under An Assumed Name, Partnership. Penal Law. § 440-b CERTIFICATE OF PARTNERSHIP That (1).) Howard K. Huckle and Dorothy L. Huckle of R.D. # 2 Ontario, New York do hereby certify, in pursuance of Section 440-b. of the Penal Law, that we, now Conduct and transact business at R.D. # 2 in the Town of Ontario, New York, under the name of Huckle Mink Ranch And we do further certify that the true and real full names of all the persons who now conduct and transact *258 the same, together with the residence of said persons, are as follows, viz.: Name
Residence
Town or City
Howard K. Huckle
R.D. #2
Ontario, N. Y.
Dorothy L. Huckle
R.D. #2
Ontario, N. Y. IN WITNESS WHEREOF, We have this 16th day of January 1952, made and signed this certificate. /s/ Howard K. Huckle /s/ Dorothy L. Huckle An individual checking account with the Union Trust Co. of Rochester, New York, now a branch of the Maine Midland Trust, was opened under the name Huckle Mink Ranch on January 17, 1952. The signature card recites that it is for use with the account of an individual doing business under an assumed name, and is signed by Howard Huckle alone. On the card's face appears a notation that a certificate of doing business under an assumed name is on file. This reference is to the certificate of partnership which was filed the previous day, and which has been discussed above. In October of 1956 a second checking account was opened under the name of Huckle Mink Ranch. This one was a joint account on which either Howard or Dorothy could draw checks, and was with the Lincoln Rochester Trust Co. of Rochester, New York. The signature card made *259 up by the bank recites that it is for use with an individual account using an assumed name. This card is signed by both Howard and Dorothy and there is no distinction between the status of the two signatures. When it became necessary to secure advances for the operation of the mink business, Dorothy and Howard both signed the notes. On July 1, 1953, petitioner and Howard purchased a peat bog and a lease to digging rights from Hazel Maples, taking title to the lease and the tangible property in their joint names. This bog was referred to as the Junis Peat Co. A second peat bog was purchased August 29, 1959. It was referred to as the Finger Lakes Peat Moss Co., and its real estate and tangible assets were transferred to the name of Howard K. Huckle alone. Both bogs were purchased with funds borrowed jointly by Howard and Dorothy and the loans were repaid with funds derived from the operation of the mink ranch. Howard considered his wife a 212 partner in both of the peat moss operations, although he managed them and took care of their books. During the summer of 1958 marital difficulties began to develop between petitioner and Howard. On September 22, 1959, a combination separation *260 agreement and property settlement was entered into. Prior to signing this agreement of September 22, 1959, two prior attempts had been made to arrive at a suitable property settlement. In both of these proposed agreements the petitioner would have received less than half the assets of the mink and peat bog businesses, but in each instance she would have received substantial other benefits, such as $400 to $550 monthly payments. As it was finally agreed upon, Dorothy received most of the mink farm business, and Howard received the peat bogs and part of the mink breeding stock. She received net assets worth $89,000 and Howard received net assets worth $117,000. However, Howard agreed to take and be responsible for their adopted daughter Marilyn Jean who was mentally retarded, and who was then 16 years old. A divorce was granted October 14, 1959. Throughout the course of the divorce litigation petitioner staunchly maintained that she was an equal partner in their various businesses. The petitioner was active in the operation of the mink ranch during the summertime until she ceased teaching in 1944. From that time until their children went to school she worked in her spare time, and *261 from and after about 1950 she devoted a substantial amount of her time to the business. Her most important duties were keeping the books and records, preparing all checks, paying the bills, and answering the telephone. In addition, she assisted by watering and feeding the minks, and when it came time to skin the minks for their pelts, she helped along with the other hands. She also helped separate the kits from their mothers. Howard was foreman of the ranch and in such capacity was responsible for selecting which minks would be retained for breeding purposes and which should be skinned for their pelts. His decisions, however, were based upon the advice he received from the Hudson's Bay Co.'s breeder who came regularly to assist at pelting time. Howard was in charge of managing the hired hands, but he discussed with Dorothy the hiring, firing, and salaries of all employees. In none of the documents relating to the petitioner's separation and divorce, which were put into the record of the instant proceeding, did Howard contest her assertions that she was his equal partner in their various businesses. The petitioner and Howard filed joint income tax returns for the taxable years *262 1956, 1957 and 1958. On each of these returns the farm self-employement social security tax was paid only for Howard. In 1959, when the petitioner filed a separate individual return, she acquired a social security number for the first time, and paid the farm selfemployment tax. In 1959 Howard applied for, and obtained, a tax refund for the years 1956 and 1958 based on a net operating loss carryback of the mink ranch from 1959. No part of this refund was passed on to petitioner. During 1957 Howard's attorney had a CPA, Harold C. Baumann, propose alternative methods of selling the mink ranch business. In his computations Baumann assumed that the business was a sole proprietorship. Petitioner and Howard K. Huckle were equal partners at the time of their separation on September 22, 1959, in the following: (1) A business called the Huckle Mink Ranch (2) A peat moss operation consisting of two bogs called the Junis Peat Co. and the Finger Lakes Peat Moss Co.
(3) The following rental properties - (a) a duplex in Union Hill, New York, and (b) a triplex on the grounds of the Mink Ranch in Ontario, New York. Opinion The respondent's disallowance is based on his determination *263 that at the time she entered into the property settlement, prior to obtaining a divorce, petitioner was an equal partner with her husband Howard K. Huckle in: a mink ranch, a peat moss company composed of two peat bogs, and two small apartment houses, and thus had a much smaller tax basis in inventory and in depreciable properties than she had returned. Respondent's determination, however, results in petitioner being able to take as a deduction her share (determined to be one-half) of all net operating losses generated by the various ventures before the property settlement was consummated. 213 The parties agree that the existence or nonexistence of a partnership as to the mink business is determinative of the petitioner's basis in those assets of such business which were transferred to her pursuant to the property settlement agreement, for under the rule in United States v. Davis, 370 U.S. 65 (1962), property received by one spouse from the other, pursuant to such an agreement entered into prior to a divorce, takes on a basis in the hands of the recipient equal to its fair market value at the time of such transfer. Under both New York and Federal law it is a pure *264 question of fact as to whether or not a partnership existed. Keen v. Jason, 187 N. Y. S. 2d 825 (S. Ct. 1959), affd. 207 N. Y. S. 2d 1001 (App. Div. 1960); Commissioner v. Tower, 327 U.S. 280 (1946). No disability prevents husbands and wives from engaging in partnerships in New York State. Suan v. Caffe, 122 N. Y. 308, 25 N.E. 488 (C.A. 1890). And, under both bodies of law, the intent of the parties is the most important factor to be considered. Keen v. Jason, supra; Commissioner v. Culbertson, 337 U.S. 733 (1949). Intent must be determined by examing the actions of the parties and their own statements about their relationship. One important fact which tends to establish the existence of a partnership is that petitioner contributed original capital to the mink ranch enterprise. Although the record does not show what portion, if any, of the original investment in the business was made by Howard, the facts suggest that his contribution was small relative to petitioner's. Petitioner was employed as a teacher at the time the mink ranch was started; she also had some assets of her own at the time of their *265 marriage two years previously. Howard, on the other hand, brought no assets to the marriage, and during the year when the business was started, had been unemployed for an unspecified period of time. Also relevant in determining whether petitioner and her husband intended that a partnership exist between themselves is the manner in which the proceeds of the enterprise were used. Those funds which were not reinvested in the business, or used to buy food and clothing for the family, were used to purchase securities in equal amounts for Howard and Dorothy and to repay loans incurred in the purchase of two peat moss farms or bogs. Although one of the peat bogs was carried in Howard's name, the other was titled in petitioner's and Howard's joint names. Howard testified that he considered his wife to be a partner in both bogs and we agree. The manner in which a business holds itself out to the public is evidence of what relationship existed between its owners. For that reason two points have received much attention from the parties and we feel they merit brief discussion. First, and most important, petitioner and Howard signed and filed with the State of New York a formal certificate *266 of partnership in 1952. This document, which states a partnership exists, was drawn up by their lawyer, John C. Cramer, Jr. There has been no evidence introduced to show that he made an error, or didn't know what he was doing when he prepared and filed this instrument. He was not called as a witness or shown to have been unavailable; we therefore presume that he prepared the certificate because he was told, or knew, that his clients were partners. The certificate was filed pursuant to a New York law which made it a misdemeanor for partners to do business under an assumed name without filing such a certificate. Petitioner's explanations of this certificate were contradictory and unpersuasive. She testified that it was filed in order to enable her to sign checks, however, when a new bank account was opened the day after filing the certificate only Howard's signature appeared on the card. In the absence of any explanation, we are forced to conclude that the certificate was filed because the petitioner and Howard believed that they were partners and that the law required them to file it. Such action, of course, gave notice to the general public that the "Huckle Mink Ranch" was a partnership *267 composed of Howard and Dorothy Huckle. Second, much testimony and evidence was devoted to the subject of the mink ranch's letterheads and the captions on its purchase invoices. Its letterheads never revealed that a partnership existed. In fact, old stationery purchased prior to 1952 stated that Howard was the "owner." The purchase invoices which were printed in the early 1940's bore as their sole heading "Howard K. Huckle." They made no reference to the mink ranch, but they were apparently used by it. Because of the distinctive character of husband and wife partnerships it does not seem unreasonable that a husband would choose not to advertise his wife as being his partner even though he knew such a partnership existed. Furthermore, the fact that the letterhead stating that Howard was the owner was not reordered but was replaced with 214 new stationery which stated only the name of the business, Huckle Mink Ranch, suggests that by 1952 Howard realized that it was inappropriate for him to proclaim himself the owner. As to the purchase invoices, we note that they were purchased when the business was first started and we do not believe that great thought went into choosing a name *268 to put on them. In fact, only in 1952 when the name Huckle Mink Ranch was settled on and registered does it appear that any single name was consistently used by the business. Other of the more important factors to be considered in determining whether a partnership was intended to exist are the amount and kinds of work petitioner did, and the nature of the administrative responsibility she discharged. In the instant case, petitioner worked as much as her other responsibilities permitted. Until 1944 she taught school and could only work full time during her summer vacations. From about 1944 to about 1950 she had to take care of her small children, but from the time her children became of school age, she devoted most of her time to the business. Her primary responsibilities were in the office where she was in charge of paying all the bills and answering the telephone. However, when she was needed to help outside with the animals she did so. She watered and fed the minks, helped wean the kits, and aided in the skinning operation. Our overall impression is that petitioner worked as hard as she could doing whatever needed to be done in the operation of the business. In addition to the *269 letterheads and purchase invoices, we have not ignored other evidence favorable to the petitioner. We have noted that prior to 1956 Howard's was the only signature which appeared on the bank's signature card. However, the significance of this fact is diminished because in 1956 a joint account was opened at the Lincoln Rochester Trust Company under the name of Huckle Mink Ranch and both petitioner's and Howard's names appeared on the card. We have also noted that the signature card used in opening this account was not of the type usually used by that bank for partnership accounts. However, because the account was carried in the firm name and both signatures appeared on the signature card which was used, we feel that this omission is insignificant. We have considered the fact that no social security tax was paid for Dorothy during any of the years while she was married. It is our opinion that the reason this tax was not paid was because petitioner and Howard felt that they could get away with not paying it. No evidence has been introduced to show that upon consideration of all the facts, and in light of the filed certificate of partnership, the petitioner and Howard decided that she *270 was not liable for the tax. Therefore, we will not infer that no partnership existed from their failure to do what should have been done. We have considered the fact that during 1957 Howard was interested in selling the mink ranch business, and that his attorney had an accountant prepare figures illustrating different methods for doing so. Although the accountant apparently proceeded under the assumption that the business was a sole proprietorship, the record does not show that he was qualified to know whether a partnership existed between petitioner and Howard. No evidence suggests why the accountant assumed the business was a proprietorship. He was not called as a witness and we are unwilling to speculate as to his reasons. The petitioner asks that we infer the nonexistence of a partnership from the facts surrounding two proposed property settlements which preceded the one finally adopted on September 22, 1959. Although in both of the proposed property settlements the petitioner would have received less than half the assets of the businesses, she would have received other benefits of substantial magnitude. We are unable to conclude, as petitioner asks, that the reason Howard *271 offered to give her less than half the assets outright was that he considered himself the sole owner. Rather, we feel that the agreements were viewed as a whole and that Howard considered the value of his proposals, inter alia, to make continuing payments of from $400 to $550 per month as more than compensating for the slightly larger share of the assets he would have received. The final agreement of September 22, 1959, resulted in Howard taking slightly more than half of the total of his and petitioner's combined assets. However, his taking custody of their mentally retarded daughter would seem to be an added liability, though its extent would be difficult to measure. From the terms of the entire agreement, we can draw no inference that either Howard or Dorothy regarded Howard as the sole owner of the businesses. 215 We are aware of the adversary nature of petitioner's divorce proceeding, however, we are unable to overlook the petitioner's sworn statements which she made in that proceeding and which provide the basis for our finding that she then staunchly maintained that she was an equal partner in their various businesses. Such sworn statements are contained in Dorothy's *272 affidavit, which is dated May 13, 1959, and filed in support of her complaint against Howard in the New York Supreme Court, County of Wayne. Such affidavit reads in pertinent part: I continued to teach grammar school for thirteen years after I married my husband in order to support ourselves and to furnish our home by reason of his limited earnings. My husband lost his job with the American Telephone and Telegraph Company in the spring of 1933 and was unemployed until the fall of 1933 when he went to work for one Arthur Godfrey of Waterloo, New York and shortly thereafter we commenced a small mink farm operation from the money we jointly accumulated in the sum of One Thousand ($1,000.00) Dollars. We both worked hard for many years thereafter and were successful in building up a very profitable business. An appraisal of the business made by Inter City Business Service, Inc., 230 Main Street, Buffalo 2, New York in 1957 estimates that the fair and conservative value of our mink ranch * * *. Ever since we commenced the mink ranch operation, my husband and I have worked and developed it as equal partners and the real property is in our names as husband and wife. We also own a double, *273 wooden frame dwelling at Union Hill, New York for which we paid Six Thousand ($6,000.00) Dollars in December, 1953. The mortgage balance upon this house in 1958 was Nineteen Hundred Fifty ($1950.00) Dollars and the premises are occupied by employees of our mink ranch. My husband and I also own a peat bog in Junius, New York for which we paid Fifteen Thousand ($15,000.00) Dollars. He also owns a peat bog near Junius, New York formerly known as "Finger Lakes Peat Company" for which he paid Thirty Seven Thousand ($37,000.00) Dollars out of income produced by the mink ranch operation of which I am a partner. * * * The property settlement offered by my husband is nothing more than what I presently own as my share in property owned as husband and wife which I actually earned by my labor, services and capital contributed by me. * * * and that my husband be ordered not to perform any acts in violation of my interest as wife and partner in our jointly owned property and business venture, * * * to return to me all of the * * * equipment, tools and other items used in the operation of our mink ranch business, all of the mink pelts taken by him, and the sum of Ten Thousand ($10,000.00) Dollars, *274 and any other funds and miscellaneous property taken by him and converted to his own use, all in violation of my interest in the same as wife and business partner, together with such other relief as may be just in the premises. Dorothy L. Huckle (L.S.) Sworn to before me this 13th day of May, 1959 Earl R. Guttenberg Commissioner of Deeds Petitioner has offered no explanation for the obvious and many inconsistencies between her prior statements and her present ones. We are unwilling to ignore her previous statements as having been made in the heat of conflict. They are sworn, and are entitled to due consideration. As to the peat bogs, we have considered that one was recorded in Howar's name and the other jointly in petitioner's and Howard's names, and that Howard managed and kept the records on both bogs. These considerations, which by themselves might suggest that petitioner was not a partner in the entire peat moss business are outweighed in our view by the other facts of record, and especially by the fact that both bogs were purchased with funds borrowed by Howard and Dorothy jointly, with such loans being repaid out of the earnings of the mink ranch. Since the peat *275 bogs were purchased with funds from the operation of the mink ranch we believe that Howard and Dorothy considered the ownership of the bogs to be 50-50, the same as the ownership of the mink ranch. Finally as to the two pieces of rental property we have concluded that because the triplex was located on the grounds of the mink ranch that it too was owned in the same manner. As to the duplex in Union Hill, there is no evidence of record other than the petitioner's sworn statement of May 13, 1959, which indicates unambiguously that she considered herself a joint owner of the property. Our findings that petitioner and Howard were equal partners in the mink business, the peat moss operations, and the rental apartments upholds the Commissioner's 216 determination. Howard testified that he and petitioner were partners on a 50-50 basis and we have found that profits were withdrawn from the mink ranch to purchase securities in equal amounts for both. The petitioner has argued that no partnership existed, and has made no alternative argument that if she is found to be Howard's partner that her share was less than half. The regulations, section 1.761-1(c), Income Tax Regs. *276 , provide that where the partnership agreement is silent "the provisions of local law shall be considered to constitute part of the agreement." Section 40 of the New York Partnership Law provides that, absent a contrary agreement, partners "share equally in the profits" of the partnership. Because of concessions of the parties, Decision will be entered under Rule 50. Footnotes
1. If no husband-wife partnership existed then petitioner's basis in the inventory and in the depreciable property here involved would have been substantially higher than that determined by the respondent because all, rather than only one-half of such inventory and property, would have come to petitioner by reason of the property settlement.↩