ALEDA N. HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 11836.   Promulgated July 14, 1947.

*Douglas D. Felix, Esq.*, for the petitioner.
*Bernard D. Hathcock, Esq.*, for the respondent.

54

OPINION.

HILL, *Judge*: The cost to petitioner of the 6,000 shares of stock received by her from Davis is the question.[1] Petitioner claims the cost amounts to the value attributed to the stock for the purpose of the agreement. Respondent contends that the cost amounts to the stock's fair market value when received by petitioner. We agree with petitioner.

We interpret the transaction as follows: In connection with separation and divorce petitioner agreed to relinquish certain rights she had in Davis' property. Davis, in consideration therefor, agreed to pay petitioner $750,000. The manner of Davis' payment was later agreed upon. In this latter connection petitioner agreed to accept 6,000 shares of Western Auto class A stock in satisfaction of $360,000 of the $750,000 Davis had agreed to pay her. In other words, petitioner used $360,000 of her $750,000 credit in acquiring the stock. In our opinion, the stock therefore cost her $360,000.

Respondent in effect contends that petitioner paid for the stock by relinquishing certain rights. Respondent argues that these relinquished rights are virtually incapable of being evaluated and that therefore the fair market value of the property she accepted as consideration for relinquishing the rights must be taken as the measure of the rights' value and that this value represents her cost basis. This view, in our opinion, misconceives the transaction in question. Petitioner did not relinquish her rights in consideration of certain designated property. She relinquished her rights in consideration of $750,000. There is no inference made that the transaction was not an arm's length one and we consider that it was. It therefore would seem that if we are to measure the value of the rights by what petitioner was willing to accept for their relinquishment, $750,000 becomes the measure, being what petitioner agreed to accept and not the fair market value of the property constituting the medium of payment.

Respondent, on brief, states that no case directly in point has been discovered, but respondent cites two cases involving the tax consequences to the husband in such situations as the present. *Commissioner* v. *Halliwell*, 131 Fed. (2d) 642; certiorari denied, 319 U. S. 741, and *Commissioner* v. *Mesta*, 123 Fed. (2d) 986; certiorari denied, 316 U. S. 695. The problem in these cases was in part to determine what amount the husband received for property transferred to his wife under circumstances like the present. In other words, what was the husband's sale price? Respondent argues

[1] Due to a 3 to 1 split-up of this stock and the issuance of stock rights certain adjustments in the cost basis are involved but are not here in controversy. A determination of the question stated above will afford the necessary answer for determining the proper cost basis of the 1,700 shares sold by petitioner in 1941.

that these cases hold that the fair market value of the property when transferred constitutes the husband's sale price and, therefore, in the instant situation should constitute the wife's cost. Neither case is in point. In the *Halliwell* case, *supra*, the sale price of the securities transferred by the husband was held by the Circuit Court to be $461,887.62 and this amount represented the aggregate value of the separate values attributed to the various securities by the parties in the form of a schedule similar to the one here involved. See *Walter S. Halliwell*, 44 B. T. A. 740, at 743, for the schedule. No point was made by this Court or the Circuit Court in the *Halliwell* case distinguishing between the value attributed to the securities by the husband and wife, on the one hand, and the fair market value on the other. The *Halliwell* case, therefore, does not stand for the proposition that fair market value as distinguished from the value agreed upon by the parties must be considered as the sale price received by the husband in transfers like the instant one.

In the *Mesta* case, *supra*, no value was attributed to the property transferred by the husband to the wife. The wife did not agree to accept a certain amount of money, but agreed to accept 5,200 shares of stock of the Mesta Machine Co., and no value was attributed to these shares by the parties. Under these circumstances, in the absence of any agreed value, it was held that the fair market value represented the husband's sale price. The Circuit Court said:

> * * * The fair market value of the property or benefit received by Mesta for the stock may be difficult to ascertain, *but in the absence of any other value being shown* we think that it is proper to take fair market value. In the case at bar the amount of the *taxpayer's obligation to his wife was fixed in part in terms of stock* by the parties themselves who really dealt at arm's length with one another. * * * We think that we may make the practical assumption that a man who spends money or gives property of a fixed value for an *unliquidated* claim is getting his money's worth. [Emphasis supplied.]

In the instant case Davis' obligation was liquidated, i. e., $750,000, and was not fixed in terms of stock to which no value was attributed by the parties. It is clear, therefore, that the *Mesta* case is distinguishable and does not stand for the proposition that fair market value must be taken instead of the values agreed upon by the parties in satisfaction of a fixed claim or amount.

The determining consideration in the *Halliwell* and *Mesta* cases is the extent to which the husband realized economic benefit. In the instant case Davis benefited to the extent of $360,000 by transferring the 6,000 shares. Conversely, we consider that petitioner paid $360,000 worth of her credit of $750,000 for the 6,000 shares of Western Auto class A stock, and we hold, therefore, that their cost basis to her is $60 a share.

Reviewed by the Court.

*Decision will be entered under Rule 50.*