UNITED STATES v. DAVIS ET AL.

No. 190.   Argued March 28, 1962.—Decided June 4, 1962.*

I. *Henry Kutz* and *Harold C. Wilkenfeld* argued the cause for the United States in both cases.   With them on the briefs were *Solicitor General Cox, Assistant Attorney General Oberdorfer, Wayne G. Barnett, Meyer Rothwacks* and *Arthur I. Gould.*

*Converse Murdoch* argued the cause and filed briefs for the respondents in No. 190 and petitioners in No. 268.

*Together with No. 268, *Davis et al.* v. *United States*, also on certiorari to the same Court.

Mr. Justice Clark delivered the opinion of the Court.

These cases involve the tax consequences of a transfer of appreciated property by Thomas Crawley Davis [1] to his former wife pursuant to a property settlement agreement executed prior to divorce, as well as the deductibility of his payment of her legal expenses in connection therewith. The Court of Claims upset the Commissioner's determination that there was taxable gain on the transfer but upheld his ruling that the fees paid the wife's attorney were not deductible. 152 Ct. Cl. 805, 287 F. 2d 168. We granted certiorari on a conflict in the Court of Appeals and the Court of Claims on the taxability of such transfers. [2] 368 U. S. 813. We have decided that the taxpayer did have a taxable gain on the transfer and that the wife's attorney's fees were not deductible.

In 1954 the taxpayer and his then wife made a voluntary property settlement and separation agreement calling for support payments to the wife and minor child in addition to the transfer of certain personal property to the wife. Under Delaware law all the property transferred was that of the taxpayer, subject to certain statutory marital rights of the wife including a right of intestate succession and a right upon divorce to a share of the husband's property. [3] Specifically as a "division in settlement of their property" the taxpayer agreed to transfer to his wife, *inter alia,* 1,000 shares of stock in the E. I. du Pont de Nemours & Co. The then Mrs. Davis agreed to

---

[1] Davis' present wife, Grace Ethel Davis, is also a party to these proceedings because a joint return was filed in the tax year in question.

[2] The holding in the instant case is in accord with *Commissioner* v. *Marshman,* 279 F. 2d 27 (C. A. 6th Cir. 1960), but is contra to the holdings in *Commissioner* v. *Halliwell,* 131 F. 2d 642 (C. A. 2d Cir. 1942), and *Commissioner* v. *Mesta,* 123 F. 2d 986 (C. A. 3d Cir. 1941).

[3] 12 Del. Code Ann. (Supp. 1960) § 512; 13 Del. Code Ann. § 1531. In the case of realty, the wife in addition to the above has rights of dower. 12 Del. Code Ann. §§ 502, 901, 904, 905.

accept this division "in full settlement and satisfaction of any and all claims and rights against the husband whatsoever (including but not by way of limitation, dower and all rights under the laws of testacy and intestacy) . . . ." Pursuant to the above agreement which had been incorporated into the divorce decree, one-half of this stock was delivered in the tax year involved, 1955, and the balance thereafter. Davis' cost basis for the 1955 transfer was $74,775.37, and the fair market value of the 500 shares there transferred was $82,250. The taxpayer also agreed orally to pay the wife's legal expenses, and in 1955 he made payments to the wife's attorney, including $2,500 for services concerning tax matters relative to the property settlement.

## I.

The determination of the income tax consequences of the stock transfer described above is basically a two-step analysis: (1) Was the transaction a taxable event? (2) If so, how much taxable gain resulted therefrom? Originally the Tax Court (at that time the Board of Tax Appeals) held that the accretion to property transferred pursuant to a divorce settlement could not be taxed as capital gain to the transferor because the amount realized by the satisfaction of the husband's marital obligations was indeterminable and because, even if such benefit were ascertainable, the transaction was a nontaxable division of property. *Mesta* v. *Commissioner*, 42 B. T. A. 933 (1940); *Halliwell* v. *Commissioner*, 44 B. T. A. 740 (1941). However, upon being reversed in quick succession by the Courts of Appeals of the Third and Second Circuits, *Commissioner* v. *Mesta*, 123 F. 2d 986 (C. A. 3d Cir. 1941); *Commissioner* v. *Halliwell*, 131 F. 2d 642 (C. A. 2d Cir. 1942), the Tax Court accepted the position of these courts and has continued to apply these views in appropriate cases since that time, *Hall* v. *Commissioner*,

9 T. C. 53 (1947); *Patino* v. *Commissioner*, 13 T. C. 816 (1949); *Estate of Stouffer* v. *Commissioner*, 30 T. C. 1244 (1958); *King* v. *Commissioner*, 31 T. C. 108 (1958); *Marshman* v. *Commissioner*, 31 T. C. 269 (1958). In *Mesta* and *Halliwell* the Courts of Appeals reasoned that the accretion to the property was "realized" by the transfer and that this gain could be measured on the assumption that the relinquished marital rights were equal in value to the property transferred. The matter was considered settled until the Court of Appeals for the Sixth Circuit, in reversing the Tax Court, ruled that, although such a transfer might be a taxable event, the gain realized thereby could not be determined because of the impossibility of evaluating the fair market value of the wife's marital rights. *Commissioner* v. *Marshman*, 279 F. 2d 27 (1960). In so holding that court specifically rejected the argument that these rights could be presumed to be equal in value to the property transferred for their release. This is essentially the position taken by the Court of Claims in the instant case.

## II.

We now turn to the threshold question of whether the transfer in issue was an appropriate occasion for taxing the accretion to the stock. There can be no doubt that Congress, as evidenced by its inclusive definition of income subject to taxation, *i. e.*, "all income from whatever source derived, including . . . [g]ains derived from dealings in property,"[4] intended that the economic growth of this stock be taxed. The problem confronting us is simply *when* is such accretion to be taxed. Should the economic gain be presently assessed against taxpayer, or should this assessment await a subsequent transfer of the property by the wife? The controlling

---

[4] Internal Revenue Code of 1954 § 61 (a).

statutory language, which provides that gains from dealings in property are to be taxed upon "sale or other disposition," [5] is too general to include or exclude conclusively the transaction presently in issue. Recognizing this, the Government and the taxpayer argue by analogy with transactions more easily classified as within or without the ambient of taxable events. The taxpayer asserts that the present disposition is comparable to a nontaxable division of property between two co-owners,[6] while the Government contends it more resembles a taxable transfer of property in exchange for the release of an independent legal obligation. Neither disputes the validity of the other's starting point.

In support of his analogy the taxpayer argues that to draw a distinction between a wife's interest in the property of her husband in a common-law jurisdiction such as Delaware and the property interest of a wife in a typical community property jurisdiction would commit a double sin; for such differentiation would depend upon "elusive

---

[5] Internal Revenue Code of 1954 §§ 1001, 1002.

[6] Any suggestion that the transaction in question was a gift is completely unrealistic. Property transferred pursuant to a negotiated settlement in return for the release of admittedly valuable rights is not a gift in any sense of the term. To intimate that there was a gift to the extent the value of the property exceeded that of the rights released not only invokes the erroneous premise that every exchange not precisely equal involves a gift but merely raises the measurement problem discussed in Part III, *infra*, p. 71. Cases in which this Court has held transfers of property in exchange for the release of marital rights subject to gift taxes are based not on the premise that such transactions are inherently gifts but on the concept that in the contemplation of the gift tax statute they are to be taxed as gifts. *Merrill* v. *Fahs*, 324 U. S. 308 (1945); *Commissioner* v. *Wemyss*, 324 U. S. 303 (1945); see *Harris* v. *Commissioner*, 340 U. S. 106 (1950). In interpreting the particular income tax provisions here involved, we find ourselves unfettered by the language and considerations ingrained in the gift and estate tax statutes. See *Farid-Es-Sultaneh* v. *Commissioner*, 160 F. 2d 812 (C. A. 2d Cir. 1947).

and subtle casuistries which . . . possess no relevance for tax purposes," *Helvering* v. *Hallock,* 309 U. S. 106, 118 (1940), and would create disparities between common-law and community property jurisdictions in contradiction to Congress' general policy of equality between the two. The taxpayer's analogy, however, stumbles on its own premise, for the inchoate rights granted a wife in her husband's property by the Delaware law do not even remotely reach the dignity of co-ownership. The wife has no interest—passive or active—over the management or disposition of her husband's personal property. Her rights are not descendable, and she must survive him to share in his intestate estate. Upon dissolution of the marriage she shares in the property only to such extent as the court deems "reasonable." 13 Del. Code Ann. § 1531 (a). What is "reasonable" might be ascertained independently of the extent of the husband's property by such criteria as the wife's financial condition, her needs in relation to her accustomed station in life, her age and health, the number of children and their ages, and the earning capacity of the husband. See, *e. g., Beres* v. *Beres,* 52 Del. 133, 154 A. 2d 384 (1959).

This is not to say it would be completely illogical to consider the shearing off of the wife's rights in her husband's property as a division of that property, but we believe the contrary to be the more reasonable construction. Regardless of the tags, Delaware seems only to place a burden on the husband's property rather than to make the wife a part owner thereof. In the present context the rights of succession and reasonable share do not differ significantly from the husband's obligations of support and alimony. They all partake more of a personal liability of the husband than a property interest of the wife. The effectuation of these marital rights may ultimately result in the ownership of some of the husband's

property as it did here, but certainly this happenstance does not equate the transaction with a division of property by co-owners. Although admittedly such a view may permit different tax treatment among the several States, this Court in the past has not ignored the differing effects on the federal taxing scheme of substantive differences between community property and common-law systems. *E. g., Poe* v. *Seaborn,* 282 U. S. 101 (1930). To be sure Congress has seen fit to alleviate this disparity in many areas, *e. g.,* Revenue Act of 1948, 62 Stat. 110, but in other areas the facts of life are still with us.

Our interpretation of the general statutory language is fortified by the long-standing administrative practice as sounded and formalized by the settled state of law in the lower courts. The Commissioner's position was adopted in the early 40's by the Second and Third Circuits and by 1947 the Tax Court had acquiesced in this view. This settled rule was not disturbed by the Court of Appeals for the Sixth Circuit in 1960 or the Court of Claims in the instant case, for these latter courts in holding the gain indeterminable assumed that the transaction was otherwise a taxable event. Such unanimity of views in support of a position representing a reasonable construction of an ambiguous statute will not lightly be put aside. It is quite possible that this notorious construction was relied upon by numerous taxpayers as well as the Congress itself, which not only refrained from making any changes in the statutory language during more than a score of years but re-enacted this same language in 1954.

### III.

Having determined that the transaction was a taxable event, we now turn to the point on which the Court of Claims balked, *viz.,* the measurement of the taxable gain realized by the taxpayer. The Code defines the taxable

gain from the sale or disposition of property as being the "excess of the amount realized therefrom over the adjusted basis . . . ." I. R. C. (1954) § 1001 (a). The "amount realized" is further defined as "the sum of any money received plus the fair market value of the property (other than money) received." I. R. C. (1954) § 1001 (b). In the instant case the "property received" was the release of the wife's inchoate marital rights. The Court of Claims, following the Court of Appeals for the Sixth Circuit, found that there was no way to compute the fair market value of these marital rights and that it was thus impossible to determine the taxable gain realized by the taxpayer. We believe this conclusion was erroneous.

It must be assumed, we think, that the parties acted at arm's length and that they judged the marital rights to be equal in value to the property for which they were exchanged. There was no evidence to the contrary here. Absent a readily ascertainable value it is accepted practice where property is exchanged to hold, as did the Court of Claims in *Philadelphia Park Amusement Co.* v. *United States*, 130 Ct. Cl. 166, 172, 126 F. Supp. 184, 189 (1954), that the values "of the two properties exchanged in an arms-length transaction are either equal in fact, or are presumed to be equal." Accord, *United States* v. *General Shoe Corp.*, 282 F. 2d 9 (C. A. 6th Cir. 1960); *International Freighting Corp.* v. *Commissioner*, 135 F. 2d 310 (C. A. 2d Cir. 1943). To be sure there is much to be said of the argument that such an assumption is weakened by the emotion, tension and practical necessities involved in divorce negotiations and the property settlements arising therefrom. However, once it is recognized that the transfer was a taxable event, it is more consistent with the general purpose and scheme of the taxing statutes to make a rough approximation of the gain realized thereby than to ignore altogether its tax

consequences. Cf. *Helvering* v. *Safe Deposit & Trust Co.*, 316 U. S. 56, 67 (1942).

Moreover, if the transaction is to be considered a taxable event as to the husband, the Court of Claims' position leaves up in the air the wife's basis for the property received. In the context of a taxable transfer by the husband,[7] all indicia point to a "cost" basis for this property in the hands of the wife.[8] Yet under the Court of Claims' position her cost for this property, *i. e.*, the value of the marital rights relinquished therefor, would be indeterminable, and on subsequent disposition of the property she might suffer inordinately over the Commissioner's assessment which she would have the burden of proving erroneous, *Commissioner* v. *Hansen*, 360 U. S. 446, 468 (1959). Our present holding that the value of these rights is ascertainable eliminates this problem; for the same calculation that determines the amount received by the husband fixes the amount given up by the wife, and this figure, *i. e.*, the market value of the property transferred by the husband, will be taken by her as her tax basis for the property received.

Finally, it must be noted that here, as well as in relation to the question of whether the event is taxable, we

---

[7] Under the present administrative practice, the release of marital rights in exchange for property or other consideration is not considered a taxable event as to the wife. For a discussion of the difficulties confronting a wife under a contrary approach, see Taylor and Schwartz, Tax Aspects of Marital Property Agreements, 7 Tax L. Rev. 19, 30 (1951); Comment, The Lump Sum Divorce Settlement as a Taxable Exchange, 8 U. C. L. A. L. Rev. 593, 601–602 (1961).

[8] Section 1012 of the Internal Revenue Code of 1954 provides that: "The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses). . . ."

draw support from the prior administrative practice and judicial approval of that practice. See p. 71, *supra.* We therefore conclude that the Commissioner's assessment of a taxable gain based upon the value of the stock at the date of its transfer has not been shown erroneous.[9]

## IV.

The attorney-fee question is much simpler. It is the customary practice in Delaware for the husband to pay both his own and his wife's legal expenses incurred in the divorce and the property settlement. Here petitioner paid $5,000 of such fees in the taxable year 1955 earmarked for tax advice in relation to the property settlement. One-half of this sum went to the wife's attorney. The taxpayer claimed that under § 212 (3) of the 1954 Code, which allows a deduction for the "ordinary and necessary expenses paid . . . in connection with the determination, collection, or refund of any tax," he was entitled to deduct the entire $5,000. The Court of Claims allowed the $2,500 paid taxpayer's own attorney but denied the like amount paid the wife's attorney. The sole question here is the deductibility of the latter fee; the Government did not seek review of the amount taxpayer paid his own attorney, and we intimate no decision on that point. As to the deduction of the wife's fees, we read the statute, if applicable to this type of tax expense, to include only the expenses of the taxpayer himself and not those of his wife. Here the fees paid her attorney do not appear to be "in connection with the determination, collection, or refund" of any tax of the taxpayer. As the Court of Claims found, the wife's attorney "considered the problems from the standpoint of his client alone. Cer-

---

[9] We do not pass on the soundness of the taxpayer's other attacks upon this determination, for these contentions were not presented to the Commissioner or the Court of Claims.

tainly then it cannot be said that . . . [his] advice was directed to plaintiff's tax problems . . . ." 152 Ct. Cl., at 805, 287 F. 2d, at 171. We therefore conclude, as did the Court of Claims, that those fees were not a deductible item to the taxpayer.

*Reversed in part and affirmed in part.*

MR. JUSTICE FRANKFURTER took no part in the decision of these cases.

MR. JUSTICE WHITE took no part in the consideration or decision of these cases.