MILDRED F. SWAIM, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2929-67.   Filed May 21, 1968.

*Henry J. Burt, Jr.,* for the petitioner.
*W. Gerald Thornton,* for the respondent.

FAY, *Judge:* Respondent determined a deficiency of $11,682.91 in petitioner's income tax for the taxable year 1964.

The petition in this case, in addition to raising issues with respect to the taxable year 1964, requested a refund of income taxes for the taxable years 1960, 1961, and 1962. By an order dated October 30, 1967, this Court dismissed the case for lack of jurisdiction insofar as it related to the taxable years 1960, 1961, and 1962.

Petitioner failed to discuss on brief certain issues mentioned in her pleadings and at the trial herein. We therefore conclude that she abandoned these issues. The issues left for decision are: (1) Whether petitioner received income under section 453(a)[1] in the taxable year 1964 when she received payment on an installment obligation held by her and (2) whether respondent is estopped from litigating the first issue with petitioner.

---

[1] All statutory references are to the Internal Revenue Code of 1954.

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Mildred F. Swaim, the petitioner (hereinafter referred to as Mildred), filed a Federal individual income tax return for the taxable year 1964 with the district director of internal revenue for the district of Kentucky. She was a legal resident of Louisville, Ky., when she filed the petition in this case.

Mildred married Harry L. Swaim (hereinafter referred to as Harry) on March 21, 1925. They were subsequently divorced. They remarried on June 12, 1930.

In 1945 Mildred and Harry bought a home and farmland near Jeffersontown, Ky. (hereinafter referred to as the Jeffersontown property). They took title to the property in joint tenancy.

On September 8, 1959, Mildred and Harry sold the Jeffersontown property to Berkley Homes, Inc., for a net price of $417,860.90. As payment therefor, Mildred received a downpayment (including the option price) of $41,980.46 and three promissory notes in the total amount of $176,950. The notes were equal in amounts and were due on September 8, 1960, September 8, 1961, and September 8, 1962. Harry received a downpayment of $21,980.46 and three promissory notes in the total amount of $176,950. The notes payable to him were equal in amounts and were payable at the same times as the notes received by Mildred. Both Mildred and Harry elected to report their profit on this sale on the installment method pursuant to section 453.

Mildred collected the proceeds of the 1960 note payable to her, and Harry collected the proceeds of the 1960 note payable to him.

On September 20, 1960, Mildred instituted divorce proceedings against Harry in the Fourth Division of the Chancery Branch of the Jefferson Circuit Court in Louisville, Ky. (hereinafter referred to as Jefferson Circuit Court). This proceeding was adversary in character.

On April 23, 1962, the Jefferson Circuit Court promulgated its "Findings of Fact and Conclusions of Law" in Mildred's divorce suit. This document contains findings of fact to the effect that Harry provided all the money for the purchase of the Jeffersontown property. The document also contains the following pertinent passages:

Under the [Kentucky] restoration statutes and the cases of *Hicks* v. *Hicks*, 290 SW (2) 483 and *Eckhoff* v. *Eckhoff*, 247 SW (2) 374, [the] properties acquired by the plaintiff [Mildred] as a result of her marriage to the defendant [Harry] must be restored to him before an award of alimony can be made.

Under the decision of the Court of Appeals and the *Kivett* case [312 SW (2) 884] it would appear that restoration should be made insofar as possible, of the

identical property which was delivered or conveyed to the plaintiff. This would mean that the house on Glenwood Road, the furniture located therein, the two [remaining installment notes from the sale of the Jeffersontown property] and the investments purchased by the plaintiff would have to be re-transferred to the defendant before an award of alimony could be made. However, since the defendant's estate is substantial and the award of alimony will be made on a lump sum basis, the Court will not require the plaintiff to actually transfer any of the aforementioned assets to the defendant unless the award of one-third of the estate of the defendant is less than the value of the property which should be restored to him.

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Under the rule in the *Heustis* case, 346 SW (2) 778, plaintiff is entitled to at least one-third of [Harry's] property. In view of the length of the marriage of the parties, the Court believes that a total award of $180,000.00 would be appropriate. The question now arises as to what property the $180,000.00 should comprise. The Court finds that the plaintiff is entitled to title in the Glenwood Road property residence with a value of $40,000.00, the furniture with a value of $5,000.00, the investments acquired by her amounting to $42,458.96, and one of the two installment notes owing to her in the sum of $58,983.83. This leaves a balance of $33,557.21 after the plaintiff has assigned to the defendant the final installment note from Berkley Homes, Inc. owing to her in the sum of $58,983.83. The Court believes that it would be equitable to require the defendant to pay this balance of $33,557.21 in a first installment of $10,000.00 due forty (40) days after date of judgment, and the balance of $23,557.21 to be paid in eleven (11) annual installments, commencing ninty (90) days from date of judgment. * * *

On June 14, 1962, the Jefferson Circuit Court promulgated its "Judgment" in Mildred's divorce suit. The judgment granted Mildred a final divorce against Harry. It also listed in detail all the properties of which Harry was to be the rightful owner following the divorce. The judgment contained the following provisions relative to Mildred's property rights:

3. The plaintiff, Mildred F. Swaim, is hereby directed and ordered to assign to the defendant, Harry L. Swaim, all of her right, title and interest in and to the final installment of a $58,983.33 promissory note made payable to her from Berkley Homes, Inc., being the installment due on September 8, 1962.

4. The plaintiff, Mildred F. Swaim, is adjudged to be the sole owner of the following property:

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(c) Plaintiff is likewise entitled to retain and receive payment on the installment note from Berkley Homes, Inc., payable to her, insofar as the installment due and payable on September 8, 1961, is concerned, being in the principal amount of $58,983.34.

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

The above amounts are adjudged to the plaintiff as a portion of the lump sum alimony due her under the terms of this judgment.

On July 5, 1962, the Jefferson Circuit Court promulgated an "Amended and Supplemental Judgment" in Mildred's divorce suit. Among other things, this document ordered Mildred to keep the 1962 installment note instead of the 1961 note and to transfer to

Harry the 1961 note instead of the 1962 note. The occasion for this change was that sometime prior to June 1962 Mildred collected $5,000 as a partial payment on the 1961 note payable to her.

In 1964, Mildred collected $56,370 as a final payment on the 1962 note payable to her.

On April 14, 1966, Mildred signed an Internal Revenue Service Form 870 entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment." No one from the Internal Revenue Service signed the form. Mildred signed the form after discussing her taxable years 1960, 1961, and 1962 with the Internal Revenue Service personnel.

In her Federal income tax return for 1964, Mildred did not include any income under section 453(a) from the collection of $56,370 as a final payment on the 1962 note payable to her. This omission was explained in the following note attached to her return:

> Mrs. Swaim received $56,370 in 1964 as the final installment on the sale of a farm in 1959. In all previous returns this has been taken as a capital gain. It was so reported after meetings with the Internal Revenue and the auditing of prior returns. It was originally contended by Mrs. Swaim that this was a Court award in a divorce proceeding rather than a capital gain item. This position was taken based upon Judgment Jefferson Circuit Court of June 14, 1962 Action No. 52595. However, in 1964 the Internal Revenue Service, in regard to the 1962 return of Mrs. Swaim, reversed its original position and now contends as originally contended by taxpayer that moneys received for sale of the farm were awarded to Mrs. Swaim as a divorce settlement and that they are not taxable items to her but taxable to Harry L. Swaim. Please see related action of Internal Revenue Service in regard to returns of Harry L. Swaim. Accordingly, claim for refund has been filed by Mrs. Swain for prior years and the said Note in the amount of $56,370.00 is not listed for capital gains tax in this return.

In his notice of deficiency for 1964, respondent determined that Mildred should have included income under section 453(a) because of the collection of $56,370 on the 1962 note payable to her.[2]

OPINION

The first issue for decision is whether Mildred received income under section 453(a)[3] in 1964 when she received $56,370 in final payment of the 1962 note payable to her.

---

[2] The statement normally attached to a notice of deficiency is not in the record. The Court therefore does not know the amount by which respondent increased Mildred's income. Nor does it know whether respondent made other adjustments to Mildred's return.

[3] SEC. 453. INSTALLMENT METHOD.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

In *Harry L. Swaim*, 50 T.C. 302 (1968), a case related to the case at bar,[4] we held that Harry had a gain under section 453(d)(1)[5] in 1962 when the Jefferson Circuit Court awarded to Mildred the note payable to her. We based our holding on the Supreme Court's decision in *United States* v. *Davis*, 370 U.S. 65 (1962), and on our decision in *David R. Pulliam*, 39 T.C. 883 (1963), affd. 329 F.2d 97 (C.A. 10, 1964), certiorari denied 379 U.S. 836 (1964).

We think it follows from our holding in *Harry L. Swaim, supra,* that in 1962 Mildred received a stepped-up cost basis in the 1962 note payable to her. We base this conclusion upon the following language in the *Davis* opinion:

> Moreover, if the transaction is to be considered a taxable event as to the husband, the Court of Claims' position leaves up in the air the wife's basis for the property received. In the context of a taxable transfer by the husband,[7] all indicia point to a "cost" basis for this property in the hands of the wife.[8] Yet under the Court of Claims' position her cost for this property, i.e., the value of the marital rights relinquished therefor, would be indeterminable, and on subsequent disposition of the property she might suffer inordinately over the Commissioner's assessment which she would have the burden of proving erroneous * * *. Our present holding that the value of these rights is ascertainable eliminates this problem; for the same calculation that determines the amount received by the husband fixes the amount given up by the wife, and this figure, i.e., the market value of the property transferred by the husband, will be taken by her as her tax basis for the property received. [Footnotes omitted.] [370 U.S. 73]

While it might be argued that the quoted language is dicta, we see no reason to disregard it. It is a clear and logical solution to one of the tax questions involved with divorces.

The only remaining problem herein is to determine the amount of Mildred's basis in the 1962 note payable to her. Following again the quoted language from *Davis*, Mildred's basis should equal the "amount received" by Harry. Applying the *Davis* rule to section 453(d)(1), Harry is treated as receiving the fair market value of the 1962 note payable to Mildred. It follows that Mildred has a basis in the note equal to its fair market value in 1962.

---

[4] While these cases are related, the Court, because of the resistance of one of the parties, did not consolidate them.

[5] SEC. 453(d). GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATIONS.—

(1) GENERAL RULE.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—

(A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

(B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of distribution, transmission, or disposition otherwise than by sale or exchange.

Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

Respondent does not assert that the fair market value of the 1962 note payable to Mildred was, in 1962, other than its face value.[6] We therefore assume that its fair market value equaled its face value of $58,983.33.

We accordingly hold that Mildred realized no income in 1964 when she received $56,370 as a final payment on the 1962 note payable to her.

As we have disposed of the substantive issue in Mildred's favor, it is not necessary for us to consider the estoppel issue which she raised.

Because the statement normally attached to a notice of deficiency is not in the record, we order that

*Decision will be entered under Rule 50.*

---

[6] The deficiency notice in *Harry L. Swaim,* 50 T.C. 302 (1968), is based upon the theory that the fair market value of the note equaled its face value in 1962.