In re Elizabeth D. RINEHART, Debtor.

Keith L. Phillips, Trustee, Plaintiff,

v.

Elizabeth D. Rinehart, Steve H. Tapscott, and Sports Supplements South, Inc., Defendants.

Bankruptcy No. 02–90026–DOT.
Adversary No. 04–03086–DOT.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 27, 2005.

John Randolph Smith, Smith & Wells, P.C., Richmond, VA, for Debtor and Defendant.

Robert H. Chappell, III, Jennifer J. West, Timothy G. Moore, Spotts Fain PC, Richmond, VA, for Plaintiff.

Robert A. Canfield, Canfield, Baer, Heller & Johnston, LLP, Michael J. Champlin, Bowen, Champlin, Carr Foreman & Rockech Richmond, VA, for Defendants.

## MEMORANDUM OPINION

DOUGLAS O. TICE JR., Chief Judge.

Trial was held May 25, 2005, on the trustee's amended complaint to determine extent, validity and priority of the estate's interest in property rights and to compel turnover of property of the estate. The complaint sought a determination of the bankruptcy estate's interest in payments due debtor Elizabeth Rinehart from defendant Steve H. Tapscott or defendant Sports Supplements South, Inc. Specifically, the trustee seeks to recover sums allegedly due debtor under an agreement entered into by debtor and Tapscott in connection with their separation and eventual divorce. The trustee's position is partially justified, and the court will enter judgment against Tapscott and Sports Supplements for a portion of the amounts claimed.

### Findings of fact

Debtor and Tapscott were married on August 7, 1993. At that time, debtor was employed by Sports Supplements, a Virginia corporation wholly owned by Tapscott. Debtor and Tapscott separated on December 15, 2000. On January 12, 2001, debtor and Tapscott entered into a marital agreement captioned "Agreement and Stipulation in Accordance with Sections 20–109

and 20–109.1 Code of Virginia, 1950, as Amended." This agreement was incorporated into the October 10, 2002, final decree of divorce between the parties.

The marital agreement contained terms relating to both future payments to debtor and the disposition of the marital property. The relevant terms are outlined below:

1. The marital home would be sold by listing it with a realtor and following the advice of the realtor. Debtor was to receive $15,000 or 50% of the net proceeds of the sale, whichever was greater. Tapscott was to pay the two notes secured by the home until the sale and was also to hold debtor harmless for any nonpayment on his part. Tapscott was to maintain life insurance on debtor until her obligation on the debts secured by the home was extinguished.

2. Debtor waived any interest in Sports Supplements and Tapscott was to remove her name as director. In the event that the company was sold, debtor would receive 15% of the gross sales price, less a proportionate share of the corporate liabilities. If debtor were deceased at the time of the sale, the couple's daughter would receive debtor's share of the sales proceeds.

3. Sports Supplements was to pay debtor $600.00 a week, which would be reduced to $250.00 a week when debtor obtained new employment. This $250.00 per week would continue until the couple's daughter attained the age of 18. At that time, the amount would be increased to $400.00 per week. Tapscott personally guaranteed the payments of Sports Supplements, but any payments that he might make pursuant to that guaranty would be deemed to be spousal support.

4. The PT Cruiser owned by the couple was to be retained by Tapscott and debtor's name was to be removed from the note and title within 90 days. Debtor agreed to execute whatever documentation was necessary to put the car in the name of Tapscott solely.

5. A Corvette automobile was to be sold and the proceeds used to purchase a 2000 Ford Explorer or similar vehicle for debtor, up to a cost of $24,200.00. Any difference between the sales price of the Corvette and the maximum purchase price of the Explorer was to be provided by Tapscott.

6. If either party were to file bankruptcy, the divorce case might be reopened and a petition made for a specific award of spousal support.

7. The agreement contained the provision that "[t]he Wife acknowledges that the foregoing provisions for her, together with her anticipated income from other sources will provide for her support and maintenance and that the foregoing, considering all of the Wife's circumstances, is fair, adequate and satisfactory to her and is in the keeping with her accustomed standard of living and her reasonable requirements, giving consideration to her own ability to provide for her own support." Both parties waived all claims for support, maintenance or lump sum settlement.

8. Damages to either party caused by the other party's breach of the agreement would be subject to indemnification by the breaching party.

Additional findings of fact are stated below.

### Discussion and Conclusions of Law

On November 18, 2002, debtor filed a chapter 7 bankruptcy petition. On May 25, 2004, the trustee initiated this adversary proceeding, seeking a determination of the extent, validity and priority of the estate's interest in sums due debtor from Tapscott and Sports Supplements pursuant to the marital agreement. The trustee argues that his powers under the bankruptcy code allow him to recover, for the benefit of the bankruptcy estate, all amounts due debtor from Tapscott or Sports Supplements. In making a determination in this case, the court will first address the issue of what types of debt the trustee may recover for the benefit of the estate and will then turn to the specific claims of debtor, Tapscott and Sports Supplements.

*Trustee's right to recovery.*

The parties do not dispute the claim of the trustee to whatever amounts may be awarded against Tapscott as a result of prepetition violations of the marital agreement. Likewise, the parties do not dispute that all pre-petition arrearages of the weekly payments due from Sports Supplements or Tapscott are part of the bankruptcy estate. However, the parties dispute the trustee's right to recover amounts due to debtor because of the failure of Tapscott and Sports Supplements to make the required weekly payments in the 180 day period after the filing of debtor's bankruptcy petition.

■ At the conclusion of trial, the court ruled from the bench that the weekly obligations owed to debtor pursuant to the marital agreement were in the nature of alimony and support and were not in the nature of a property settlement. In reaching this determination, the court was persuaded by the fact that the weekly payments due were calibrated so as to provide debtor ample support, and the payments would be adjusted with the change of circumstances in debtor's life. The agreement in fact contains language that "[t]he Wife acknowledges that the foregoing provisions for her, together with her anticipated income from other sources will provide for her support and maintenance and that the foregoing, considering all of the Wife's circumstances, is fair, adequate and satisfactory to her and is in the keeping with her accustomed standard of living and her reasonable requirements, giving consideration to her own ability to provide for her own support." Further evidence of the fact that the weekly payments were intended as support is found in the marital contract provision that if Sports Supplements did not make a payment and Tapscott were forced to make it, the payment would be considered spousal support. Similar analysis leads to the conclusion that the insurance payments that were to have been made through Sports Supplements were in the nature of alimony and support as well.

Having established that the periodic payments were in the nature of alimony and support and not in the nature of a property settlement, the court must ascertain whether the payments are properly included in the bankruptcy estate. The trustee argues that pursuant to the provisions of § 541(a)(5)(B), payments that became due and payable in the 180 day period after the bankruptcy filing become part of the bankruptcy estate. The trustee bases his right to recovery upon § 541(a)(5)(B) of the bankruptcy code, which provides that property of the estate includes

> "any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180

days after such date—(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; . . . ."

11 U.S.C. § 541(a)(5)(B).[1] Therefore, the issue before the court is whether the alimony payments that became due and owing in the 180 days after the filing of debtor's bankruptcy petition are property interests includible in debtor's bankruptcy estate and recoverable by the trustee or whether those payments are more in the nature of income earned post-petition that is property of the debtor and is not recoverable by the trustee.

The issue of whether post-petition support payments should be included in the bankruptcy estate pursuant to § 541(a)(5)(B) has not been addressed by the Fourth Circuit and indeed has been addressed by few courts. However, the case of *Peters v. Wise (In re Wise)*, 346 F.3d 1239 (10th Cir.2003), shows a balanced and reasoned analysis of the issue.

In making its determination that awards of spousal support accruing during the 180 days after the filing of a petition are not properly included in a bankruptcy estate, the Tenth Circuit looked at the language of the statute and concluded that the first inquiry must be whether the debtor had a property interest in the payment under state law. The court found that under Colorado law, the right to payment of maintenance is a personal statutory right and not a property right. *Id.* at 1242. Having determined that the right to alimony was not "an interest in property" addressed in § 541(a)(5)(B), the court refused to reach out to include rights to

post-petition alimony in the bankruptcy estate. Further, the court found that the plain language of the statute leads to the conclusion that "Congress acted intentionally and purposefully in excluding spousal maintenance or alimony from the statutory language. If Congress had intended for the provision to reach maintenance awards, it would have specifically included language to that effect." *Id.* at 1243 (citations omitted).[2]

The analysis of the Tenth Circuit is persuasive. In attempting to ascertain whether the right to alimony or support is an "interest in property" under Virginia law, the court has been unable to locate dispositive Virginia authority. The court does note the decision of the United States Supreme Court in *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), in which the Court analyzed the tax consequences of the transfer of property pursuant to a divorce settlement. In the course of its analysis, the Court remarked that in "the present context the rights of succession and reasonable share do not differ significantly from the husband's obligations of support and alimony. They all partake more of a personal liability of the husband than a property interest of the wife." *Id.* at 70, 82 S.Ct. 1190.

■ However, the outcome of the inquiry into Virginia law on the nature of property interests in alimony or support is not critical because the statutory construction analysis utilized by the Tenth Circuit in *Wise* is dispositive of the issue. As noted by the Tenth Circuit, if the legislature had meant the provisions of § 541(a)(5)(B) to apply to awards of alimony and support, it

---

1. Section 542 of the bankruptcy code provides that "an entity that owes a debt that is property of the estate . . . shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset . . . against a claim against the debtor."

2. Other courts addressing this same issue have made similar determinations. See, e.g., *Kelly v. Jeter (In re Jeter)*, 257 B.R. 907 (8th Cir. BAP 2001); *In re Peterson*, 280 B.R. 886 (Bankr.S.D.Ala.2001).

would have said so clearly. Rather, the language specifically includes only "property settlements." Thus, post-petition spousal support payments unmatured on the date of the filing of the petition are not property of the estate and are not recoverable by the trustee under § 541(a)(5)(B). Rather, they are in the nature of income earned after the filing of the petition, which is not properly included in a chapter 7 bankruptcy estate.

Having ascertained the trustee's right to claim the prepetition amounts due debtor from Tapscott or Sports Supplements, the next task is to assess the claims of the debtor, Tapscott, and Sports Supplements against each other.

*Claims of debtor against Tapscott.*

■ The trustee argues that debtor is owed prepetition payments provided for in the marital agreement and itemized by debtor. Tapscott and Sports Supplements dispute the amount claimed, asserting that the amount should be reduced to $250.00 per week as of July 13, 2001, because at that time debtor had gained full-time employment as a dog breeder, which would have extinguished her right to payment of healthcare premiums under the marital agreement. However, there is scant evidence that in fact debtor was gainfully employed as a dog breeder. The evidence shows that debtor did not gain full-time employment until August, 2002, as is evidenced by the difference between debtor's gross income in 2001 and 2002 and by the multiple employers who provided debtor with 1099 statements for 2001. Additionally, debtor's 2001 federal tax return shows only $2,550.00 as income from self-employment during that year.

The trustee is thus correct in his assertion that the monthly amount due under the marital agreement should not have been reduced to $250.00 per week until August 2002. The payments, either paid or estimated, due from July 13, 2001, to August 2002, were deficient by the sum of $350.00 per week. Tapscott and Sports Supplements have not shown that the amount due prepetition was other than the $41,900.00 claimed by debtor.

In addition to the periodic payments due under the marital agreement, the trustee cites other breaches entitling debtor to relief from Tapscott only. Specifically, he claims $24,200.00 because Tapscott did not provide debtor with a replacement vehicle, as required by the marital agreement, and debtor was then forced to purchase her own vehicle.

In contravention of the terms of the marital agreement, Tapscott failed to sell the Corvette to facilitate his purchase of a vehicle for debtor and never provided her with a vehicle free and clear of liens. Tapscott does not defend his failure to sell the Corvette, but instead he asserts that the failure of debtor timely to sign over the title to the PT Cruiser was a breach of the marital agreement. He argues that this was the cause of his inability to purchase the Ford Explorer free and clear of liens for delivery to debtor. However, the marital agreement is clear that the Corvette was to be sold and the proceeds used to purchase a vehicle for debtor. Debtor's untimely execution of the title to the PT Cruiser does not excuse, nor did it cause, Tapscott's failure to sell the Corvette and deliver a vehicle to debtor. Rather, the evidence indicates that Tapscott chose not to consummate a sale on the PT Cruiser because it would have resulted in a deficiency on the note secured by the vehicle. Tapscott instead financed a vehicle and provided it to debtor. Thus, Tapscott is indebted for the $24,200.00 amount con-

tained in the marital agreement.[3]

In addition, the trustee claims $ 2,092.80 in expenses for a rental car debtor was forced to obtain when Tapscott seized the encumbered vehicle he had provided to debtor. Tapscott defends his actions in taking the car by asserting that debtor had refused to have the car titled in her name or to provide insurance on it. However, the marital agreement provides that a vehicle would be provided to debtor by Tapscott, and the provisions for the sale of the Corvette and the maximum price stated in the agreement indicate that the parties clearly intended for the car provided for debtor to be paid for and not subject to any encumbrance. Therefore, while debtor may or may not have been justified in refusing to have the car placed in her name, the fact remains that Tapscott was required by the marital agreement to provide a vehicle for debtor, and his reclaiming of the Explorer for a period of several weeks thus breached the marital agreement. Further, the issue of insurance on the vehicle was not a term of the marital agreement and cannot be asserted by Tapscott as an event of breach on the part of debtor.

Finally, the trustee claims $ 1,756.85 due for health insurance premiums unpaid by Tapscott prior to the entry of the final decree of divorce. Tapscott disputes the health insurance amount due debtor from him by raising the issue of debtor's alleged full-time employment as a dog breeder, which would have extinguished her right to the payment of healthcare premiums under the marital agreement. However, that issue has already been addressed in the discussion of the calculation of weekly amounts due under the marital agreement, and Tapscott's assertion has been found to be groundless. Thus, Tapscott remains liable for the health insurance purchased by debtor.

*Tapscott's claims to setoff.*

Having addressed debtor's claims under the marital agreement, the court now turns to the issue of setoff. Tapscott claims that he has incurred substantial damages because of debtor's failure to perform under the marital agreement, and he argues that those damages should be deducted from any amount due to debtor from him pursuant to the marital agreement.

▇ A. First, Tapscott asserts that he ceased to make the mortgage payments on the marital residence, thus causing the house to be foreclosed upon, because debtor did not cooperate in the marketing of the property. An exhibit submitted by the trustee in which Tapscott outlined his claims to damages contained the following notation: "7/02 House forclosed [sic] and credit now fouled up. Had sale of house ... for $290,000 on 5/02 but Eliz wanted $3000 Dwn for rent of house til closing as well as $3000 per month rent so people said no...." He argues that he was forced to expend $31,000.00 in additional mortgage payments that he would not have had to make had debtor cooperated in the sale of the residence. He further alleges that the foreclosure sale of the residence brought $50,000,00 less than it would have brought had it been sold other than at foreclosure.

However, Tapscott has provided no proof of this beyond his conclusory assertions. He has provided no proof of the value of the residence at various relevant time periods and sparse documentation of the listing history of the residence. He

---

**3.** Debtor testified that she eventually purchased her own 2001 Ford Explorer for $26– 27,000.00.

also asserts that debtor's lack of cooperation in facilitating a sale of the residence caused him to return to state court for a remedy, but he has submitted no proof of that and no proof of his costs in relation to the state court action. Most persuasive is the fact that the foreclosure took place only two months after the unsuccessful offer and negotiations relative thereto, but Tapscott had ceased to pay the mortgage in January 2002, four months prior. The actual cause of the foreclosure was the action of Tapscott in discontinuing the mortgage payments. Therefore, any diminution, proven or unproven, in the value of the residence, should be borne by Tapscott.[4] Further, any mortgage payments made by Tapscott are not recoverable because those payments were required by the marital agreement until the property was sold, not until Tapscott decided to discontinue them.

■ **B.** Tapscott is not entitled to any offsets related to any failure of debtor to sign over the title to the PT Cruiser. Tapscott admitted that he did not sell the vehicle because none of the offers he received would have paid the note secured by the vehicle in full. There was no evidence that debtor's failure to sign over title caused the losses alleged by Tapscott as damages, but rather the evidence indicates that no sale was consummated because it would have resulted in a deficiency on the note. There is no evidence that Tapscott was unable to sell the vehicle solely because debtor failed to endorse the title.

■ **C.** Tapscott is not entitled to an offset for the insurance paid on the Ford Explorer that he provided to debtor. He was the owner of the vehicle, it was subject to a lien, and the insurance was necessary to protect him as owner. There is no evidence that debtor requested Tapscott to provide the insurance, and providing insurance was not required of either party by the marital agreement.[5]

■ **D.** Tapscott is not entitled to an offset for any loss from the sale of the Ford Explorer he provided to debtor. He was required to provide a vehicle to debtor pursuant to the terms of the marital agreement. He did not comply with the terms or the spirit of the agreement; instead of selling the Corvette and using the funds from the sale to purchase a vehicle for debtor, he purchased and financed the Explorer, presenting it to debtor subject to a lien. Having presented it to debtor, however, Tapscott was certainly not entitled to repossess it at any time he desired and leave debtor without transportation, and he certainly was not entitled to claim damages to the vehicle resulting from any repossession.

■ **E.** Tapscott is not entitled to the attorney's fees of Judson Collier because Tapscott admitted that the $10,000.00 in fees claimed represented the entire amount paid by Tapscott in connection with his divorce from debtor, not just the fees related to any alleged breach of the marital agreement. There is no allocation

**4.** The court additionally notes that there is no evidence as to the actual foreclosure price of the residence. In particular, there is no evidence that the foreclosure price was less than the $290.000.00 price. The proposed "Estimate of Seller's Settlement Charges" prepared in connection with the unsuccessful $290,000.00 offer on the residence shows that the estimated payoff of the mortgage was be-

tween $359,000.00 and $373,000.00. A foreclosure notice from Bank of America stated the debt as $371,896.33 on June 13, 2002.

**5.** The silence of the marital agreement as to the issue of insurance on the vehicle is further evidence that the parties intended for debtor to hold the vehicle provided by Tapscott free and clear of liens or any other interests.

of expenses to any alleged breach of the marital agreement. Further, there was no evidence presented at hearing of either the actual amount or the reasonableness of the attorneys' fees.

 F. Tapscott is not entitled to an offset for the fees paid to David Robinson, because those fees are not related to any alleged breach of the marital agreement but instead relate to allegations that debtor unlawfully removed monies from Sports Supplements during her employment there. Further, there was no evidence presented as to the amount of those fees.

■ G. Finally, Tapscott claims that he should be able to offset the costs of a refrigerator, freezer, washer, dryer and vinyl fencing taken from the residence by debtor. However, there has been no evidence offered that will prove the value of those items. The values cited by Tapscott are the purchase prices of the items, and those values are inappropriate given that the items were several years old when taken by debtor. In the absence of proof, the claim to offset fails.

### Conclusion

In summary, the trustee has a valid claim to all damages asserted except those periodic payments that accrued and became due and owing in the 180 days after debtor filed her bankruptcy petition. The right to collect those post-petition weekly payments belongs to debtor, and it is not property of the estate. Tapscott and Sports Supplements are responsible for the weekly payments due to debtor prepetition. Likewise, Tapscott and Sports Supplements are responsible for the payment of the health insurance premiums up until debtor's attaining full-time employment in August 2002. Tapscott alone is responsible for the damages arising from his breach of the marital agreement with respect to the provision of a car to debtor, including payment of rental car expenses. Any claim by Tapscott or Sports Supplements to a setoff against the amounts due and owing from them to debtor is denied.

A separate order will be entered.