**Charles SERIANNI, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**Josephine M. SERIANNI, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 84-5093.**

United States Court of Appeals, Eleventh Circuit.

July 16, 1985.

---

Walton, Lantaff, Schroeder & Carson, Charles P. Sacher, Coral Gables, Fla., for Josephine Serianni.

Hugh G. Isley, Jr., Louis J. DeRuil, Jack R. Loving, Ft. Lauderdale, Fla., Patricia A. Willing, Tax Div., Dept. of Justice, Washington, D.C., for Charles Serianni.

Before HILL, KRAVITCH and SMITH*, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

Petitioner-appellant Josephine M. Serianni (Josephine) appeals from a United States Tax Court decision of deficiency in her federal income tax due for 1975, based primarily on that court's holding that she, and not her former husband, Charles Serianni (Charles), is liable for tax imposed on gain realized on the liquidation proceeds of certain corporate stock transferred to Josephine by Charles. We affirm.

## Issues

The principal question presented on appeal is whether a Florida circuit court's special equity award to Josephine consisted of 22 percent of each of Charles' separate assets, or 100 percent of one such asset, namely the stock interest of Charles in Servan Land Co., Inc. (Servan), *i.e.*, 187.5 shares (26.79 percent) of a total of 700 shares outstanding. This is a question of law, and the legal effect of the state court decree controls subsidiary issues, such as: whether any portion of the gain is taxable to Charles; what is the proper basis to be used in computing gain on liquidation of the stock; and who is taxable on interest earned by the stock liquidation proceeds held on deposit in escrow pending final decision in the divorce proceedings.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Michael L. Paup, Chief, Appellate Section, Tax Div., Ann Belanger Durney, Douglas G. Coulter, Washington, D.C., for I.R.S.

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

## Background

We summarize here the facts material to this appeal.[1] Charles and Josephine met in October 1949 and were married November 23, 1949. Prior to her marriage Josephine had worked and had accumulated $2,400 in cash and jewelry valued at approximately $7,000. At the time of their marriage Josephine transferred her cash and jewelry to Charles, who had no credit. Charles used his wife's capital contribution to develop his business, a paving company in Florida called Di-Mar Paving Co., which, prior to their marriage, had a net worth of $40. Shortly after their marriage, Josephine and Charles purchased a house from which they conducted the paving business. Josephine worked in the business on a regular basis, drawing a weekly salary for her service for a period of at least 3 years.

For both, the marriage and infusion of Josephine's capital into Di-Mar Paving Co. were propitious, coinciding with a period of intense activity in the paving of substantial portions of the peninsula of Florida.

Charles proved an industrious and skillful businessman who enjoyed exceptional success in his business endeavors. This included his forming, in addition to Di-Mar Paving, several other businesses, and he acquired extensive land interests.

In 1972 Charles petitioned for divorce in the Circuit Court of the Seventeenth Judicial Circuit of Florida, which court granted the divorce. In its April 24, 1973, decree, the Florida court made extensive findings relating to the contributions of both parties to the marital estate, and further stated in pertinent part as set forth in the margin.[2]

1. The facts are set forth in greater detail in the opinion below. *Serianni v. Commissioner*, 80 T.C. 1090 (1983). We hold that petitioner-appellant has not shown that Judge Sterrett clearly erred in the facts as found by him, or in his alleged failure to find certain facts.

2. *In Re: The Marriage of Charles S. & Josephine M. Serianni*, No. 72–6622–Johnson, slip op. (Fla. Cir.Ct. Apr. 24, 1973):

"FINDINGS OF FACT

\* \* \* \* \*

"5. After Di-Mar Paving Company was formed, Husband formed Hollywood Quarries, Inc., Florida Asphalt, Inc., Di-Mar Trucking, Inc., Ferncrest Mining Co., Inc. and Ferncrest Land Co., Inc. Subsequently, Husband obtained a substantial interest in Rolling Hills Country Club (Servan Land Co.) and certain acreage in Broward County. All of these interests trace back to Di-Mar Paving Company. The earnings of Di-Mar Paving Company provided the financial means to enter the next succeeding business and so on up through all the real, personal and intangible property in which Husband has an interest. In other words, from the capital acorn planted by Wife, the entire tree of Serianni businesses with all their branches sprang. It is perhaps appropriate to note that Husband apparently has been an industrious, skillful and dedicated person to build the business complex that here exists—in no small measure truly a Horatio Alger success story.

\* \* \* \* \*

"7. Wife by clear and convincing evidence has proven beyond a reasonable doubt special equities in all of the properties of Husband, real, personal and intangible. \* \* \*

"8. \* \* \* Her personally held assets are of a meager amount comprising stocks and bank accounts of approximately $12,000.

"9. The disclosed net worth of Husband at the present date consists of the following assets owned by Husband:

| | |
|---|---|
| Cash—as declared by Husband's affidavit of March 5, 1973 \* \* \* | $10,050.36 |
| One-half interest in Payne 86 acres mortgage Receivable \* \* \* | 289,662.54 |
| Personal jewelry \* \* \* | 45,000.00 |
| Stockholders equity in \* \* \*: Hollywood Quarries, Inc. Di-Mar Paving, Inc. Di-Mar Trucking, Inc. Farmcrest Mining Co., Inc. | $2,179,799.00 |
| Less 50% interest of son, Fred Serianni, in Hollywood Quarries \* \* \*: $345,637.00 | $1,834,162.00 |
| 26.79% interest in Rolling Hills Golf Course and Lodge (Servan Land Company, Inc.), net of mortgage: | $1,018,020.00 |
| One-half interest in 160 acres contiguous to Nova University & Rolling Hills Golf & Country Club, net of mortgage: | $1,425,394.00 |
| TOTAL: | $4,622,288.90 |

"It is also significant that the net worth found herein does not include the unaccounted for cash out of Husband's personal account or the cash coming from the companies that never reached that account. A conservative approach justifies a finding that Husband's net worth is at least $5,000,000.00.

\* \* \* \* \*

"10. The equities of this cause are with the wife. Her special equities are declared to be the 26.79% stock interest of Husband in Servan Land Company, Inc[.], which represents an approximate equity of $1,018,020 or 22% of Husband's disclosed net worth.

Servan contracted on February 16, 1973, to sell the land comprising its principal asset, and on March 15, 1973, shortly before the divorce decree issued, the directors and stockholders of Servan adopted a resolution approving Servan's liquidation under section 337 of the Internal Revenue Code of 1954.[3] Servan was liquidated shortly thereafter and proceeds of Charles' 26.79 percent stock interest, $937,500, was put in escrow for Josephine, pursuant to the divorce decree. In 1975 Josephine received this cash, plus interest, when appellate review of the Serianni divorce case ceased. Neither Charles nor Josephine reported on their 1975 federal income tax returns the long-term capital gain derived from the liquidating distributions on the 26.79 percent interest in the Servan stock.

## The Special Equity Award

This consolidated appeal concerns the diverse interests of three parties: Charles, Josephine, and the Commissioner. The latter's appeal is protective; his position being

\* \* \* \* \*

"12. Wife with the special equity in the businesses of Petitioner here found has sufficient means to pay her own attorney's fees and costs of this action.

"CONCLUSIONS OF LAW

\* \* \* \* \*

"2. The mere fact that a wife has been a dutiful wife is not grounds for awarding her special equity in her husband's estate. [Citation omitted.]

"3. If the wife advances money to the husband for use in his business, she has a special equity which must be recognized by an adequate award. [Citations omitted.]

"4. Where the wife has contributed materially by her industry and services to the husband's acquisition of property, she has a special equity in his estate and when a divorce is granted she is entitled to an award in satisfaction of her equity. [Citations omitted.]

\* \* \* \* \*

"6. The awarding to wife as special equities of husband's 26.79% stock interest in Servan Land Company, Inc. will result in wife receiving very shortly an approximate $1,000,000 in cash subject to closing adjustments for the pending sale of Servan Land Company, Inc. properties \* \* \*. This award will in no way jeopardize Husband's other solvent business operations. Husband is also to receive very soon in a companion real estate sale a

that of a stakeholder, *i.e.*, that he is entitled to tax on the liquidation proceeds from either Charles or Josephine, or from both proportionately. Charles contends that the Tax Court correctly held that Josephine's special equity award consisted solely of 100 percent of his stock interest in Servan, and not 22 percent of each of his separate properties.

Josephine contends that she owes tax on the gain from only 22 percent of the Servan stock, with Charles owing on the remaining 78 percent, because the divorce decree granted her a 22 percent special equity interest in *all* of Charles' properties.

The tax consequences of the special equity award involve consideration of two landmark cases: *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), and *Bosch v. United States*, 590 F.2d 165 (5th Cir.1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980). In *Davis* the Supreme Court held that the husband's transfer of appreciated stock to his wife, pursuant to divorce proceedings

cash sum of approximately $1,425,394 subject to closing adjustments for the sale of his interest in 160 acres of land \* \* \*.

"FINAL JUDGMENT

"On the basis of the foregoing findings of facts and conclusions of law, the court

"ORDERS, ADJUDGES AND DECREES as follows:

"1. The bonds of marriage between petitioner, CHARLES S. SERIANNI, and respondent, JOSEPHINE M. SERIANNI, are dissolved because the marriage is irretrievably broken.

"2. The 26.79% stock interest of CHARLES SERIANNI in Servan Land Company, Inc., a Florida corporation, be and the same hereby is transferred to the wife, JOSEPHINE SERIANNI. The properties of Servan Land Company, Inc. being further described as the Rolling Hills Golf Course & Lodge which are the subject of that February 16, 1973, Agreement for Purchase & Sale \* \* \*. \* \* \*"

3. Title 26 of the United States Code. By separate contract of February 16, 1973, another of Charles' assets, his interest in acreage adjoining Servan's land, was cut from his herd of appreciated properties and also began running the gauntlet of code sections. Sales of both tracts

and in exchange for her marital rights, constitutes a taxable event to the husband, such that the wife took the higher basis in the stock. The court held that the wife's inchoate rights in her husband's property under Delaware law "do not even remotely reach the dignity of co-ownership" and "partake more of a personal liability of the husband [similar to support and alimony] than a property interest of the wife." [4]

By contrast, in *Bosch* the Fifth Circuit held that a nontaxable event occurred when the husband transferred land to his wife, pursuant to a Florida divorce decree in which the court awarded the wife a special equity in the land, such that the husband's original basis in the allocated land was carried over to the wife, who owed the tax upon its subsequent sale. The court analyzed and compared both *Davis* and the marital rights at issue there, and the nature and history of the Florida special equity concept. Finding that the "wife's special equity interest in Florida differs materially from the interest at issue in *United States v. Davis*," the court held that the special equity "constituted a division of existing property interests, and it did not constitute a taxable event to the husband." [5]

The *Bosch* case is closely on point here, [6] but on its facts it is simpler than the case at bar. Mrs. Bosch had advanced over $115,000 of her own money to her husband to improve land held in her husband's name, and upon dissolution of the marriage the land was the only piece of property divided between the spouses. This contrasts with Mrs. Serianni's contribution of cash and jewelry worth less than $10,000, plus her additional services—none of which related directly to the Servan stock. [7] The "acorn-to-tree" nature of Josephine's special equity in the Servan stock is more attenuated than that of Mrs. Bosch's direct investment in her husband's land. In addition, as Josephine points out, there doubtless is an element of practicality in the Florida court's decree, since declaring the Servan stock in liquidation to constitute Josephine's special equity minimizes disruption both to Charles' estate and to the Commissioner's as well as to both parties' long-run tax calculations. [8] Nevertheless, the concept—that of an already existing, though equitable, spousal property interest—remains distinct from the inchoate marital rights controlling in *Davis* or from marital awards such as alimony. [9]

The opinion in *Bosch* is binding

---

were to the same purchaser and were closed on the same date.

**4.** *United States v. Davis*, 370 U.S. 65, 70, 82 S.Ct. 1190, 1193, 8 L.Ed.2d 335 (1962). *But see* Deficit Reduction Act of 1984, Division A, Tax Reform Act of 1984, Subtitle B, Pub.L. No. 98–369, § 421, 98 Stat. 494, 793, to be codified at 26 U.S.C. § 1041, effectively repealing *Davis*. This new provision does not apply to the Seriannis' case.

**5.** *Bosch v. United States*, 590 F.2d 165, 168 (5th Cir.1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980).

**6.** Josephine concedes that *Bosch* applies to 22 percent of her Servan stock, but contends that *Davis* applies to the other 78 percent, consistent with her view, which we reject, that the divorce decree *awarded* her a 22 percent special equity interest in *all* of Charles' properties.

**7.** Josephine was an officer and director of Di-Mar Paving and Hollywood Quarries, but apparently never had any direct business involvement

with Servan. *In re: The Marriage of Serianni*, slip op. at 3; *Serianni*, 80 T.C. at 1102.

**8.** If Florida Circuit Court Judge Johnson had awarded Josephine a portion of the land adjoining the Servan property, the parallel with the *Bosch* facts would have been closer, but the principles of fireside equity which Judge Johnson undertook to dispense would have been the same.

**9.** *See Serianni*, 80 T.C. at 1100, 1102 discussing recent Florida Supreme Court cases distinguishing between a special equity interest and "lump sum alimony." The *Serianni* case likewise differs from the unpublished Fifth Circuit decision Josephine cites, where under Oklahoma community property law the spouses were deemed to have 50 percent ownership of the house and the husband was taxed on his half of the gain accordingly, even though he transferred 75 percent of the house sale proceeds to his wife in satisfaction of the divorce decree. Here, the Florida court declared Charles' entire share of the Servan stock to constitute Josephine's special equity interest.

precedent in this court.[10]  Where a Florida divorce court finds the wife to have proved the required contribution to assets held by the husband during marriage, the divorce decree's award of a special equity to the wife constitutes a division of existing property interests and does not constitute a taxable event to the husband.  Further, where acquisition or enhancement of such assets is found by the divorce court to be generally attributable in some part to the wife's contributions, it is also consistent with the doctrine of special equity for that court to transfer legal title to specific property of the husband in order to satisfy the existing general equitable rights established by the wife.  In these circumstances it is the transfer of specific property that constitutes the court's special equity award.

■ To support her contentions, Josephine focuses on the state court's statement in its finding of fact No. 7, that "Wife by clear and convincing evidence has proven beyond a reasonable doubt special equities in all of the properties of Husband, real, personal and intangible."  She argues, in effect, that this statement is the operative language of the court's *division* of property, and that the transfer of the Servan stock to satisfy her special equity is, in effect, an assignment of Charles' 78 percent right to the Servan stock in exchange for her 22 percent right to each of Charles' other properties.  Charles is taxable, she argues, either because he has experienced a taxable exchange of appreciated property in order to satisfy his own obligation, as in *Davis*, or because he has assigned income, *i.e.*, his alleged 78 percent of the gain on liquidation of the Servan stock.  Josephine's "assignment of income" theory is inapplicable for the reasons stated in the opinion below.[11]

We have carefully considered all contentions of error eloquently put forth by Jo-sephine, and we find them unpersuasive.  They depend heavily upon an awkward and selective reading of the state court's decree, with all emphasis on the language contained in that court's finding No. 7.  The court's language there would have to be read to mean *"each* of the properties of husband," where the word it used was *"all."*  Her arguments require a virtual disregard of the specific declaration with respect to the stock as Josephine's special equities, in finding No. 10, and of the transfer of that sole asset of Charles in paragraph 2 of the "Final Judgment" of the decree.  Furthermore, Josephine's position contains a necessary inference that the state court was unaware of consequences of the land sales and liquidations, yet, the decree discloses a full familiarity on the part of the state court with the projected dispositions of the stock and the land.  Although not necessary to our holding, it is highly likely that Judge Johnson was aware that both dispositions were of low basis assets, the proceeds of which would be diminished by way of income taxes.[12]

Perhaps there would be less chance of disagreement if, in dealing with the special equity concept, courts could use, with more clinical precision, words like "equity," "equities," "declare," "award," "satisfy," and "represent."  However, we do not perceive any ambiguity in this decree.  The simpler and more logical reading of the decree, than that argued for, is that the state court *divided* all of Charles' properties by declaring the stock interest to be Josephine's special equity and by awarding the same to her, for the *reason* that she had proved that the capital and services provided by her were directly responsible for the creation of approximately 22 percent of all disclosed assets of the marriage.  The 22 percent equitable interest was the *amount* the court found she had earned indepen-

10.  *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

11.  *Serianni,* 80 T.C. at 1102.

12.  According to tax terpsichoreography, in the recognition dance around the pole of realization, the May Queen of basis is hard to overlook.

dently of her husband, but the property transferred to her as a special award in satisfaction of that amount was legal title to the stock. The Florida court did not attempt a precise prorating of Josephine's interests in all her husband's businesses, but instead followed the approach that "from-the-acorn-springs-the-tree." It does not appear that Charles assigned Josephine anything except as ordered by the final judgment of the Florida court. We recognize that there might exist cases, the circumstances of which amount to an anticipatory assignment of income, or satisfaction, with appreciated property, of an obligation personal to one spouse, as part of a design to avoid the tax on realized gain, but there is nothing of that sort in this record. As in *Bosch*, where the court awarded some of the 3,500 acres of land to the wife in satisfaction of her proved equities in them all, the state court here awarded Josephine one property in satisfaction of her proved equities in all of Charles' properties.

### Conclusion

Accordingly, we affirm the Tax Court's holding that the transfer of Servan stock from Charles to Josephine was incident to a nontaxable division of property and not a taxable event to Charles. Josephine's basis in the stock is Charles' cost plus her own capital additions; and she is taxable upon the stock liquidation proceeds, and the interest income thereon, all as determined below.

AFFIRMED.