MICHAEL J. GODLEWSKI, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 33699-86. Filed February 9, 1988.

Michael J. Godlewski, pro se.
*Carolyn Lee Harber,* for the respondent.

STERRETT, *Chief Judge:* This case was assigned to and heard by Special Trial Judge Joan Seitz Pate pursuant to the provisions of section 7456 of the Code and Rules 180 and 181.[1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

PATE, *Special Trial Judge:* Respondent determined a deficiency of $5,989 in petitioner's 1984 Federal income tax. After concessions by both parties,[2] we need only determine the amount of gain realized by petitioner on the sale of a house transferred to him incident to his divorce.

## FINDINGS OF FACT

Michael J. Godlewski (hereinafter petitioner) resided in Lilburn, Georgia, at the time the petition in this case was filed. Some of the facts have been stipulated and are incorporated as a part of this opinion.

Petitioner was married to his former wife, Elizabeth Godlewski, on December 27, 1967. On July 13, 1973, they purchased a residence located at 1533 Sanden Ferry Drive in Decatur, Georgia, (hereinafter the house) for $32,200. The purchase was funded by a cash downpayment borrowed from petitioner's uncle and a first mortgage of $28,900. Mrs. Godlewski was named sole titleholder.[3] On June 24, 1984, the fair market value of the of the house was appraised at $66,500 by Mrs. Godlewski's professional appraiser.

Petitioner and Mrs. Godlewski lived in the house until May 16, 1981, when petitioner moved out because of

---

[1]Unless otherwise stated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent conceded all of the issues raised in the notice of deficiency except for the one at issue here. In addition, he conceded that the gain at issue should be taxed as long-term capital gain rather than short-term capital gain as determined in the notice of deficiency and that the amount realized from the sale of the house should be reduced by sales expenses of $7,373.

At trial, petitioner abandoned his contention that the recognition of gain realized on the sale of the house could be deferred under sec. 1034.

[3]Naming Mrs. Godlewski as titleholder was an attempt to shield the property from attachment or sale in the event petitioner was ever sued in his capacity as a physical education instructor. Petitioner is no longer employed in that capacity.

marital difficulties. By court order dated June 10, 1981, Mrs. Godlewski was granted exclusive use of the house and petitioner never lived there again. Mr. and Mrs. Godlewski obtained a final divorce on October 31, 1983, but the divorce decree expressly reserved the division of marital property for later determination.

Consequently, Mr. and Mrs. Godlewski executed an agreement dated July 13, 1984 (hereinafter agreement), purporting to settle "all their property rights, and all other rights and duties growing out of or rising out of the marriage relationship between the parties." Mrs. Godlewski signed the agreement on July 13, and petitioner signed it on July 25, 1984. Under its terms, Mrs. Godlewski was required to transfer title to the house to petitioner contemporaneously with the execution of the agreement, and petitioner was obligated to pay Mrs. Godlewski $18,000 within 6 months of the conveyance. If the payment was not made, the house was to be sold and one-half of the "net equity" distributed to each spouse. On August 2, 1984, the Court entered a consent judgment adopting the agreement in its entirety.

Mrs. Godlewski executed a warranty deed transferring the house to petitioner on July 20, 1984, and the deed was recorded on September 5, 1984. There is no evidence in the record as to the actual delivery date of the deed to petitioner. Petitioner paid a total of $18,000 to Mrs. Godlewski in August and October 1984, consistent with the terms of the agreement. Petitioner sold the house for $64,000 on October 26, 1984, and on December 3, 1984, he purchased a home in Lilburn, Georgia, for $75,000. Petitioner did not report the sale of the house or the acquisition of the Lilburn home on his 1984 income tax return.

Petitioner contends that respondent erred in computing the gain realized on the sale of the house by not increasing his basis to reflect the $18,000 he paid to Mrs. Godlewski. Respondent maintains that petitioner's basis in the house is its cost of $32,000 without adjustment for the $18,000 petitioner paid his ex-wife.

## OPINION

The outcome of this case turns on whether section 1041 (sec. 421(a) of the Deficit Reduction Act of 1984, Pub. L.

98-369, 98 Stat. 794) applies to the instant set of facts. The application of section 1041 is critical to our determination because it markedly changes the tax treatment accorded divorced spouses. Under section 1041, the transferor of appreciated property transferred incident to a divorce recognizes no gain and the transferee's basis in the property after transfer is the same as the transferor's basis before the transfer. In contrast, prior law provided that the transfer of appreciated property incident to a divorce resulted in the recognition of gain to the transferor and the transferee received a basis equal to the asset's fair market value at time of transfer. *United States v. Davis,* 370 U.S. 65 (1962).[4] Moreover, prior law recognized gain on the sale of property between spouses even when transacted in connection with a divorce. See *McKinney v. Commissioner,* 64 T.C. 263, 268-269 (1975). Since these provisions result in materially disparate tax consequences, it is incumbent upon us to correctly determine which of these provisions apply to the transaction at issue.[5]

In general, section 1041 applies to property transfers between former spouses incident to a divorce if such transfer took place after July 18, 1984, the enactment date of the Deficit Reduction Act of 1984. Sec. 421(d)(1), Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 795.[6]

---

[4]Exceptions to the general rule enunciated in *Davis* depended on State property and divorce law. E.g., *Bosch v. United States,* 590 F.2d 165 (5th Cir. 1979), cert. denied 444 U.S. 1044 (1980); *Serianni v Commissioner,* 80 T.C. 1090, 1100-1101(1983), affd. 765 F.2d 1051 (11th Cir. 1985).

[5]Although unclear, it appears from the record that the parties may have agreed that sec. 1041 would apply in this case. Nonetheless, it is well established that this Court may disregard stipulations of law. E.g., *Mead's Bakery v. Commissioner,* 364 F.2d 101, 106 (5th Cir. 1966), affg. on this point a Memorandum Opinion of this Court; *Estate of Di Marco v. Commissioner,* 87 T.C. 653, 663 n. 10 (1986); *Sivils v: Commissioner,* 86 T.C. 79, 82 (1986). Therefore, it is within the Court's power to determine the correct law to be applied even if the parties had knowingly agreed to such a stipulation. Cf. *Concord Consumers Housing Cooperative v. Commissioner,* 89 T.C. 125, 126-127 (1987) (Körner, J., concurring).

[6]The text of sec. 421(d), Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 795, reads as follows:

(1) IN GENERAL.—Except as otherwise provided in this subsection, the amendments made by this section, shall apply to transfers after the date of the enactment of this Act in taxable years ending after such date.

(2) ELECTION TO HAVE AMENDMENTS APPLY TO TRANSFERS AFTER 1983.—If both spouses or former spouses make an election under this paragraph, the amendments made by this section shall apply to all transfers made by such spouses (or former spouses) after December 31, 1983.

(3) EXCEPTION FOR TRANSFERS PURSUANT TO EXISTING DECREES.—Except in the case of an election under paragraph (2), the amendments made by this section shall not apply to transfers under any instrument in effect on or before the date of the enactment of this Act unless both

However, by its terms, it does not apply "to transfers under any instrument in effect on or before the date of the enactment." Therefore, to determine whether section 1041 applies to the facts presented here, we must decide whether the house was "transferred" after July 18, 1984, and, if so, whether such transfer was made under any instrument in effect on or before July 18, 1984.

The answer to the first question is fairly straightforward. The house was titled in Mrs. Godlewski's name and she executed a warranty deed in favor of petitioner on July 20, 1984. Since Mrs. Godlewski executed the deed on July 20, 1984, the transfer necessarily occurred after July 18, 1984.

The answer to whether such transfer was made under any instrument in effect on or before July 18, 1984, is not nearly so easily determined. Although, admittedly, the transfer was incident to the divorce,[7] the divorce decree specifically reserved the determination of property rights for later hearing. The inescapable conclusion, therefore, is that the transfer of the house was not "under" that "instrument."

Having eliminated the divorce decree, we next consider whether the agreement was the operative "instrument." The agreement was dated July 13, 1984, and was signed by Mrs. Godlewski on that date, clearly prior to the enactment date of July 18, 1984. However, the agreement was not executed by petitioner until July 25, 1984, obviously after the enactment of section 1041.

To be effective, an agreement settling marital rights between residents of Georgia must meet the same requisites of formation and enforceability as other contracts. See *Blum v. Morgan Guar. Trust Co. of New York*, 709 F.2d 1463, 1467 (11th Cir. 1983) (applying Georgia law for general litigation settlement); *McKie v. McKie*, 213 Ga. 582, 100 S.E.2d 580 (1957). Initially, there must be a meeting of

---

spouses (or former spouses) elect to have such amendments apply to transfers under such instrument.

(4) ELECTION.—Any election under paragraph (2) or (3) shall be made in such manner, at such time, and subject to such conditions, as the Secretary of the Treasury or his delegate may by regulations prescribe.

[7]For these purposes "transfer incident to divorce" means any transfer that occurs within one year after the date on which the marriage ceases or that is related to the cessation of the marriage. Sec. 1041(c). The transfer of the house in the instant case occurred within one year of the Oct. 31, 1983, divorce decree and, therefore, is a "transfer incident to divorce." Sec. 1041(c)(1).

minds between the parties concerning all the essential terms of the agreement. Ga. Code Ann. sec. 13-3-1 et seq. (1981). Moreover, under the Georgia statute of frauds, a contract transferring an interest in land must be in writing. Ga. Code Ann. sec. 13-5-30 (4) (1981); see *Stamps v. Ford Motor Co.*, 650 F. Supp. 390 (N.D. Ga., 1986); *Smith v. Cox*, 247 Ga. 563, 277 S.E.2d 512 (1981).

The record does not disclose any information surrounding the negotiation, preparation, or execution of the agreement except that the $18,000, at least initially, was Mrs. Godlewski's "asking" figure based on the fair market value as determined by the June 1984 appraisal. Therefore, there is no evidence indicating a meeting of minds prior to petitioner's execution of the agreement on July 25, 1984. Further, even if there were, the statute of frauds would establish, as the effective date, the day the agreement was reduced to writing. The earliest date this could have occurred was when the agreement was signed by petitioner on July 25, 1984. Thus, we conclude that section 1041 is applicable to this transaction because the agreement became effective and the transfer of the house both occurred after July 18, 1984.

As previously stated, section 1041 provides that no gain or loss is recognized on a transfer of property between the taxpayer and his former spouse if the transfer is incident to the divorce. Sec. 1041(a)(2). Rather, the property is treated as if acquired by gift. Sec. 1041(b). Moreover, the "nonrecognition rule applies whether the transfer is for the relinquishment of marital rights, for cash or other property * * * or for other consideration." H. Rept. 98-4170 (Pub. L. 369), 98th Cong., 2d Sess. 1491-1492 (1984).

Consequently, the basis to the transferee in the property is the adjusted basis of the transferor as contended by respondent. Sec. 1041(b)(2). Even so, petitioner argues that the transfer of the house was the result of a bona fide sale and, therefore, the $18,000 paid by petitioner to Mrs. Godlewski should rightfully be added to his basis to determine the amount of the gain he has to report. The temporary regulations, however, set out the unambiguous rule that—

In all cases, the basis of the transferred property in the hands of the transferee is the adjusted basis of such property in the hands of the transferor immediately before the transfer. *Even if the transfer is a bona fide sale, the transferee does not acquire a basis in the transferred property equal to the transferee's cost* (the fair market value). This carryover basis rule applies whether the adjusted basis of the transferred property is less than, equal to, or greater than its fair market value at the time of transfer (or the value of any consideration provided by the transferee) and applies for purposes of determining loss as well as a gain upon the subsequent disposition of the property by the transferee. Thus, this rule is different from the rule applied in section 1015(a) for determining the basis of property acquired by gift. [Sec. 1.1041-1T(d)A-11, Temporary Income Tax Regs., 49 Fed. Reg. 34452, 34453 (Aug. 31, 1984). Emphasis added.[8]]

Since both the statute and regulations clearly provide that the $18,000 petitioner paid his former wife does not increase his basis in the house, we hold petitioner's basis in the house is $32,200. Sec. 1041(b)(2); sec. 1.1041-1T(d)A-11, Temporary Income Tax Regs., 49 Fed. Reg. 34452 (Aug. 31, 1984).

Because of concessions,

*Decision will be entered under Rule 155.*

---

[8]These regulations were promulgated under the Treasury's general rule-making power as authorized by sec. 7805(a). They were in effect for the year in issue. While we recognize that the regulation involved is only temporary, we accord them the same weight as the final regulations. *Nissho Iwai American Corp. v. Commissioner,* 89 T.C. 765, 776 (1987); see *Zinniel v. Commissioner,* 89 T.C. 357 (1987).

